## AMERICAN NAT. INS. CO. v. NUSSBAUM. (No. 8041.)

(Court of Civil Appeals of Texas. Galveston. April 20, 1921. Rehearing Denied May 12, 1921.)

1. **Damages** ⊜132(10)—Verdict for $30,000 in favor of 70 year old plaintiff subjected to loss of leg, etc., not excessive.

Verdict for $30,000 in favor of plaintiff, a man of 70 years, injured when caught in an elevator, and caused to suffer an amputation of his leg, etc., *held* not excessive.

2. **Carriers** ⊜318(4)—Evidence held to show accident in elevator occurred as claimed by plaintiff.

In an action for injuries when caught in an elevator, evidence *held* to show clearly that the accident occurred practically as claimed by plaintiff, and as testified to by himself and his witness.

3. **Witnesses** ⊜330(1)—Question whether witness meant for jury to believe her story objectionable.

Defendant's question to plaintiff's witness on cross-examination, "Do you mean for the

jury to believe that story?" was objectionable, and should not have been asked.

**4. Appeal and error ⊚═⇒1046(5)—Trial ⊚═⇒29 (3)—Remark of court relative to examination of witness not error; if error, harmless.**

In an action for personal injuries, where defendant's counsel, cross-examining plaintiff's witness, asked her whether she meant for the jury to believe her story, and plaintiff's counsel objected to the browbeating manner in which the witness was being examined, remark of the court that he did not believe in such manner of examination, and did not approve of it, etc., was not error; if it was error, it was so trivial as not to be ground for reversal.

**5. Carriers ⊚═⇒333—Elevator passenger trying to leave elevator stopped at fifth floor not guilty of negligence.**

Elevator passenger who tried to leave the elevator when it was stopped and opened on the fifth floor of the building, under the mistaken belief that he had reached the ground floor, *held* not guilty of negligence contributing to his injuries when the operator shut the door on his foot and leg, catching and holding him while the elevator descended.

**6. Trial ⊚═⇒351(5)—Refusal of requested issues substantially submitted not error.**

Where special issues submitted by the court were substantial submission of questions requested by defendant's refused charges, the court did not err in refusing to submit such requested charges or issues.

**7. Appeal and error ⊚═⇒1062(2) — Refusal of requested charges or issues harmless where they were substantially answered.**

In an action for personal injuries when caught in defendant's elevator, refusal to defendant of certain requested charges or issues *held* harmless, in that the answers of the jury to special issues submitted by the court were substantially answers to the refused charges or issues.

**8. Evidence ⊚═⇒506 — Whether plaintiff's leg caught and held by elevator a jury question.**

In an action for injuries to an elevator passenger, whose leg was caught in the door and held while the elevator descended, in determining whether or not plaintiff's leg was or was not held in the door, as claimed by him, it was pertinent to show how easy it was to open or close the door, and the kind of door, whether easy or difficult to work, but it was for the jury, and not for experts, to form the ultimate conclusion as to whether plaintiff's leg could be or was caught and held by the door.

**9. Evidence ⊚═⇒473—Opinions of witnesses rejected where facts can be fully presented to jury who are competent to draw conclusion.**

Opinions of witnesses are rejected where it is apparent that the facts can be fully presented to the jury, and the circumstances are such that it may fairly be assumed that persons of ordinary information and intelligence are competent to draw the correct inferences from such facts.

**10. Evidence ⊚═⇒528(1)—Expert opinion as to possibility of catching leg in elevator door properly excluded.**

In an action for injuries to a passenger in an elevator when his leg was caught in the door and held as the elevator descended, exclusion of defendant's offered expert testimony as to whether it would have been possible for a man's leg to be caught and held, as claimed by plaintiff, *held* proper, the jury being competent to draw the proper inferences from the facts involved.

**11. Carriers ⊚═⇒321(23)—Evidence held not to call for submission of charge on unavoidable accident. .**

In an action for injuries to an elevator passenger, whose leg was caught in the door and held while the car descended, evidence *held* not to call for the submission of a charge on the question of unavoidable accident.

**12. Trial ⊚═⇒81—Objection that answer of witness was not responsive not sufficient.**

In an action for injuries to an elevator passenger, when his leg was caught in the door and held while the car descended, where defendant's only objection to the answer of plaintiff's witness as to her previous written statements was that it was not responsive to the question propounded by plaintiff, and there was no suggestion that the answer was in any manner hurtful to defendant, the trial court was not called upon to exclude it from the consideration of the jury, or to exclude any portion.

**13. Evidence ⊚═⇒110—Question to witness as to whether defendant had offered her money relative to her testimony proper, if asked in good faith.**

In an action for injuries to a passenger in an elevator whose leg was caught in the door and held while the elevator descended, question by plaintiff's counsel to defendant's witness as to whether or not her doctor, claiming to represent defendant, met her and her husband and offered her $10 to come to defendant's building for something with reference to her testimony, if asked in good faith, *held* admissible, counsel being within his right in propounding it.

**14. Appeal and error ⊚═⇒882(8) — Question to witness complained of invited, and harmless.**

In an action for personal injuries, where plaintiff's counsel asked a witness whether a claimed representative of defendant had offered her money with regard to her testimony, defendant cannot complain, its counsel having invited such question by his own preceding question, and the court having instructed the jury not to consider the question in arriving at their verdict.

Appeal from District Court, Galveston County; H. C. Hughes, Judge.

Suit by Joseph Nussbaum against the American National Insurance Company. From judgment for plaintiff, defendant appeals. Affirmed.

⊚═⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

· Hunt & Teagle, of Houston, and Jno. L. Darrouzet, C. W. Nugent, and Williams & Neethe, all of Galveston, for appellant.

McDonald & Wayman, of Galveston, for appellee.

LANE, J. This suit was brought by appellee, Joseph Nussbaum, against appellant, American National Insurance Company, hereinafter called the Insurance Company, for personal injuries alleged to have been suffered by appellee by reason of the negligence of a servant of appellant in the operation of an elevator used in a building owned by appellant.

The plaintiff alleged, in effect, that, having ascended to the eighth floor of said building, he, together with another, entered the elevator on said floor for the purpose of descending; that when the elevator had descended to the fifth floor the servant of defendant, who was operating the same, stopped it, and opened a stationary door guarding the entrance to the cage thereof, so that the passengers might pass from the elevator to the floor of the building, and that, just as he had advanced his right foot from the elevator to the floor of the building, the operator of the elevator suddenly, and without warning, negligently closed said stationary door upon his right foot or leg, thus catching and pinning it to the stationary door, while the remainder of his body was in the cage of the elevator, and that, while he was so held, the elevator operator caused the elevator to descend; that plaintiff, in an endeavor to extricate his foot, caught the iron grating of the door with his right hand, and as the bottom of the elevator cage descended below the fifth floor, he was caught by the top of the elevator, and badly crushed and mangled, his right leg being so badly crushed' that it was necessary to immediately amputate it above the knee, and his right hand and wrist were badly crushed, maimed, and mangled, so that they were then and will remain wholly useless. He then alleged as follows:

"Plaintiff further avers that, by reason of being so maimed and mangled, he has been injured for life; that he has continuously, since receiving said injuries, suffered, and will for the rest of his life suffer, great pain and anguish, both in mind and body; that he has been compelled to spend large sums of money for medical and surgical attention, nurses, attendants, medicines, and artificial limbs, and will have to spend large sums in the future therefor. In this connection, plaintiff avers that, at the time of receiving said injuries, he was a particularly strong, able, and active man for his years, he being 70 years of age, and was engaged in many and various business enterprises, which required not only mental, but physical, health and activity; that he was then receiving and earning an annual income of approximately $25,000, and would have continued to earn such amount; that, as a result of said injuries, plaintiff has since been so greatly impaired in health and strength as to be unable to do any mental or physical work, and will, in the future, be almost totally impaired in his ability to work and earn money. Plaintiff further avers that all of said damages have directly and proximately resulted from the injuries he sustained, as aforesaid, and that he has been damaged directly thereby in the full and just sum of $50,000.

Wherefore, plaintiff prays that, upon a final hearing hereof, he have judgment against defendant for the sum of $50,000, together with all costs in this behalf expended."

The defendant Insurance Company answered (1) by general denial; (2) by averment that the injuries of the plaintiff, if any, were the result of an unavoidable accident, and for which it was not liable; and (3), by plea of contributory negligence on the part of the plaintiff. The cause was tried before a jury on special issues, in answer to which they found:

First, that the operator of the elevator closed the door on plaintiff's leg and foot, as alleged by plaintiff, and that plaintiff was caught and held between the door and door facing, and that while so held the operator caused the elevator to descend; that such act on the part of the operator of the elevator was negligent, and was the proximate cause of the injury to plaintiff, as alleged by him.

Second, that plaintiff attempted to leave the elevator at the fifth floor, and in so doing he used ordinary care for his own safety.

Third, that the plaintiff did not grasp the door of the elevator after the door was closed and locked at the fifth floor and after the elevator was beginning to descend.

Fourth, that the plaintiff suffered damages in the sum of $30,000.

The findings of the jury were by the court approved, and judgment was thereupon rendered for plaintiff for the sum of $30,000. The Insurance Company has appealed.

The effect of the contentions made by the first, second, and third assignments are: First, that the finding of the jury that the plaintiff suffered damages in the sum of $30,000 is excessive, because there was no evidence to support a verdict for so large a sum; and second, that the finding of the jury that the plaintiff suffered damages in such large sum shows that the same was the result of passion and prejudice.

[1] Neither of these contentions can be sustained. It is shown that on the 15th day of July, 1919, appellee, Joseph Nussbaum, then 70 years of age, with a life expectancy of about 8½ years, entered the elevator operated by appellant in its building at the eighth floor, for the purpose of descending to the ground floor; that, when the elevator reached the fifth floor, the operator of the elevator stopped it, and opened the stationary door on' the fifth floor, placed for the purpose of taking on and letting off passengers at that floor;

that appellee, thinking that he had reached the ground floor, advanced his right foot to the fifth floor, and, as he did so, and before he could leave the elevator, the elevator operator closed the door on his leg and started the elevator downward; that appellee, being thus held by the stationary door, caught the door with his right hand, to try to release his foot and leg, and, while in this condition, the top of the door of the descending elevator crushed his right leg so badly that it became necessary to and it was amputated some three inches above the knee joint; his right hand was so badly injured that he has almost, if not entirely, lost the use of it, such injury being permanent; that, by reason of his injuries, he was in the hospital for seven weeks, during which time, and ever since, he has suffered much pain; that whenever the weather changes he suffers greatly from said injuries; he must keep his injured hand held upward to prevent it from paining him; since his injuries he has been unable to dress or bathe himself, and has had to employ a man constantly to assist him in these matters, and in putting on his artificial leg, which he had purchased; that, prior to his injuries he was in good health, and able to bathe and dress himself without assistance, and was able to, and did, attend to his business affairs, which were of large proportions; that up to the time of the trial of this cause he had, by reason of such injuries, necessarily incurred expenses amounting to $2,521.

Appellee's testimony, which was practically undisputed, was to the effect that he had been engaged principally in the purchase of raw lands and settling them with settlers, and improving them; that he had interests in electric light, waterworks, and ice plants in Mexia, Tex., and was also interested in a bank in said town; that he owned 3,000 acres of land in Limestone county, Tex., all in cultivation, and upon which he had 40 to 50 tenants, and that he owned, jointly with his son, 2,000 acres in Clay and Wichita counties, much of which was in cultivation; that he had an interest in mining properties in Mexico. He testified that, prior to his injuries, he had given his personal attention to many of those various interests, and that, during the years preceding his injuries, his earning capacity was approximately $20,000 a year; that since his injuries, and by reason thereof, he had not been able to give his business affairs proper attention, and that he had suffered heavy losses by reason thereof.

The facts stated are amply sufficient to sustain the findings of the jury complained of in the assignments.

[2] By the fourth assignment, it is insisted that the verdict of the jury is against the preponderance of the evidence—

"in that the physical condition of the elevator, the elevator door, and the fifth floor of the building, where the accident occurred conclu-sively shows that the accident could not have happened as shown by the evidence of plaintiff."

There is no merit in this contention. The undisputed evidence shows clearly that the accident occurred practically as claimed by appellee, and as testified to by himself, and by his witness Mrs. Green, the only person who saw the accident, except the operator of the elevator.

That the operator of the elevator opened the stationary door on the fifth floor to admit of ingress and egress of passengers; that while said door was open appellee advanced his right foot to the fifth floor, with the intention of leaving the elevator; that, while appellee's foot and a part of his leg protruded from the elevator to the fifth floor, the elevator operator started the elevator downward, and at the same time closed the door upon the leg of appellee; and that the leg and hand of appellee were crushed and injured as alleged, are facts which cannot be seriously questioned. That such act of the operator was negligent, and that it was the proximate cause of the appellee's injuries, can hardly be seriously disputed. In the face of the foregoing facts, mere inaccurate detailed statements made by the eyewitness to the accident, as to the minute details in which the same happened, are immaterial. The uncontroverted fact remains that appellee was injured through the negligence of the operator, substantially as alleged by him.

The charge of the court on the burden of proof was sufficient, and therefore the court did not err in refusing appellant's requested charge on that subject, the refusal of which is made the ground of the fifth assignment.

The 6th assignment is hypercritical, and without merit, and is overruled without further discussion.

After the witness Mrs. Green had given her version as to how the accident occurred, and had testified that she was perfectly cool at the time the accident occurred, counsel for appellant, on cross-examination, asked her the following question: "Do you mean for the jury to believe that story?" Thereupon the following colloquy occurred:

Counsel for appellee: "I object to the browbeating manner in which this witness is being examined by that counsel."

Counsel for appellant: "I don't mean a lie; I mean that statement of facts. I disclaim any purpose of that kind."

The Court: "I don't believe in that manner of examination; I don't approve of that character of examination, asking a witness whether she expects the jury to believe that kind of story."

Counsel for appellant excepted to the remarks of the court, and now make the same the grounds of the seventh and eighth assignments of error.

[3, 4] We think the question, as propound-

ed, was objectionable and that it should not have been asked. As to whether counsel for appellant was conducting the cross-examination of the witness in a browbeating manner, we are not prepared to say, as the mannerisms of counsel are not before us, and cannot be brought before us. The trial court observed the manner of the cross-examination and was in a position to pass upon the question presented, and it was his duty to require counsel to conduct such examination in an orderly manner, and we are not prepared to say that the court erred in making the statement complained of. In any event, this court would not reverse the judgment upon such a trivial matter as is complained of by this assignment. It can hardly be conceived that the remarks of the court complained of could have had any weight with a jury of ordinary intelligence in determining either the liability or the extent of liability of appellant to appellee.

The ninth assignment is as follows:

"The verdict is contrary to law, because it is shown that plaintiff's injuries were due solely to his own contributory negligence in endeavoring to get out of the elevator on the fifth floor of the building, thinking that it was the ground floor, and there being no testimony showing that defendant's operator knew, or, by the exercise of diligence, could have known, of his intention to get out on said fifth floor."

[5] There is no merit in the contention made by this assignment. The undisputed testimony of appellee and his witness, Mrs. Green, shows that at the time appellee tried to leave the elevator at the fifth floor he thought he had reached the ground floor, where he intended to leave. The fact that appellee tried to leave the elevator when the same was stopped and opened on the fifth floor, under the mistaken belief that he had reached the ground floor, could in no sense be charged to him as an act of negligence contributing to his injuries. Appellee, in the exercise of such care as a person of ordinary care would have exercised under like or similar circumstances, could not have known, or reasonably anticipated, that the elevator operator, after having opened the door, apparently for the ingress or egress of passengers, would suddenly close, or attempt to close, the same in such manner as she did, and at the same time cause the elevator to descend. We think the evidence, in effect, conclusively shows that it was the negligent act of the operator, and not the act of appellee, that was the proximate cause of the accident, and the jury so found. It was the duty of the elevator operator to see that no one was in the doorway, or was attempting to leave or enter the elevator, before attempting to close the door, and before starting the elevator downward, and, had she done so, the accident could not have occurred.

By the tenth and eleventh assignments, complaint is made of the refusal of the court to submit to the jury the following issues requested by appellant:

"1. Did or did not the plaintiff, after the elevator in which he was had reached the fifth floor of the building, and the doors at such floor had been shut by the operator in charge of the elevator, and the elevator had started its descent, grasp the doors at the fifth floor with his right hand? If you answer the foregoing question in the affirmative, then you will answer the following:

"2. Did the act of plaintiff in so grasping the doors directly contribute to cause his injuries?

"3. Would a person of common prudence, in the exercise of ordinary care for his own safety, have so grasped the door? Would a person of common prudence, in the exercise of ordinary care for his own safety, have attempted to leave the elevator at such time and place, and in such a manner, as plaintiff did?"

[6, 7] Special issues 5 and 6 submitted by the court were substantial submission of the questions requested by the refused charges, and therefore the court did not err in refusing to submit the requested issues. We may also add that it is apparent that no harm could have resulted to appellant by the refusal of the court to submit the requested charge, in that the answers of the jury to special issues 5 and 6 submitted by the court are substantially answers to the refused charges.

Upon trial of the cause, Dr. H. O. Sappington was called as a witness by defendant, and, after he had testified that he had examined the door on the fifth floor of the defendant's building opening into the elevator a day or two after the accident to the plaintiff, and as to how and with what ease the door could be opened and closed, he was asked by counsel for the defendant:

"If the door had been slammed against a man's leg, with his foot placed upon the threshold of that door, or over beyond the threshold of the floor, would it have been possible for that kind of an operation of the door to have hung his leg between the door and the door jamb?"

Upon objection urged by counsel for the plaintiff, the witness was not permitted to answer the question. To the exclusion of the answer of the witness, the defendant excepted, and preserved its bill of exception. Appellant makes the action of the court in sustaining the objection of plaintiff the ground of its eleventh assignment of error. The bill of exception taken does not state the grounds upon which the objection was based and sustained. The only recital made in the bill with reference to the objection urged is as follows: "To which question the counsel for the plaintiff objected."

The bill of exception shows that the appellant, for the purpose of rebutting testimony offered by the appellee, to the effect that appellee's leg was caught and held between the

door and doorjamb, sought the opinion of the witness H. O. Sappington as to whether it would have been possible for a man's leg to be caught and held as claimed by appellee. It is contended by appellee that, where a bill of exception to the exclusion of evidence, as in this case, fails to show the grounds of objection, it should not be considered, and in support of his contention cites Torry v. Cameron, 74 Tex. 190, 11 S. W. 1088, Railway Co. v. Gage, 63 Tex. 568, and Railway Co. v. De Milley, 60 Tex. 194.

In Railway Co. v. DeMilley, supra, it is said:

"It is incumbent upon a party who complains of the rejection of testimony to show the ground of the rejection, and, if the record be silent upon that subject, the presumption would be in favor of the correctness of the ruling of the court."

Torry v. Cameron, supra:

"It is the duty of a party who here seeks to secure a reversal of the judgment of the lower court to bring to this court a record of the proceedings sufficiently full to show clearly the error of which he complains. If he bring a record which shows the proceedings only in part, every reasonable presumption will be indulged in favor of the court's ruling, and the case will not be reversed unless it appear that upon no possible state of the case could the ruling be upheld. We cannot say that there was manifest error in excluding the testimony under consideration, and conclude, therefore, that the assignment of error predicated upon that ruling is not well taken.

"Rule 58, for the government of the district courts, requires that bills of exception to the introduction of testimony shall show in all cases the grounds of objection, and there are quite a number of decisions of this court which hold that a bill which fails in this particular should not be considered. Bonart v. Wang, 61 Tex. 33; Endick v. Endick, 61 Tex. 559, and cases cited; Willis v. Donac, 61 Tex. 588; Franklin v. Tieman, 62 Tex. 92; Railway Co. v. Gage, 63 Tex. 568; Shoe Co. v. Ferrill, 68 Tex. 638."

Concluding, however, to consider the bill, we direct attention to the fact that Dr. Sappington testified that he examined the door and made tests; that the door worked absolutely perfect; that when the door was slammed against the man's leg, in making the test, the door rebounded; that it would take practically no strength at all to open the door; that it would not require any strength whatever either way; that the slightest kind of effort would move the door.

[8-10] One of the ultimate facts in the case for the jury to determine was whether or not appellee's leg was or was not held in the door as claimed by him. In determining this, is was pertinent to know how easy it was to open or close the door; the kind of door, whether easy or difficult to work; but it was for the jury to form the ultimate conclusion as to whether appellee's leg could be or was caught and held by the door. Opinions of witnesses are rejected where it is apparent that the facts can be fully presented to the jury, and the circumstances are such that it may fairly be assumed that persons of ordinary information and intelligence are competent to draw the correct inferences from such facts. 22 C. J. 650. The jury, from Dr. Sappington's description of the door, and the method in which it operated, was just as capable of determining whether a man's leg could be caught in the door as he was. Dr. Sappington did not qualify as an expert on the operation of elevator doors. All he did was to examine the door, and make certain tests, which he detailed to the jury, who, no doubt, understood the whole situation.

The rule applicable is well stated in Newmark v. Insurance Co., 30 Mo. 160, 77 Am. Dec. 608, as follows:

"The general rule is that persons of skill in any particular science or art may give their opinions, 'when the subject-matter is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of a science or art as to require a course of previous habit or study in order to attain a knowledge of it.' 2 Taylor on Evidence, § 1038. The rule is evidently confined to cases where, from the nature of the subject, facts disconnected from such opinions cannot be so presented to the jury as to enable them to pass upon the question with the requisite knowledge and judgment."

In Coe v. Van Why, 33 Colo. 315, 80 Pac. 894, 3 Ann. Cas. 552, the court said:

"It does not appear that this hoisting plant was a complicated piece of machinery, but, as we read the record, it was exceedingly simple in construction and operation, and all the facts relating thereto, as well as its condition of repair, could be fully explained to the jury. It is not altogether clear just what particular acts of negligence plaintiff charged, but the chief reliance seems to be that the machinery was not properly supplied with a hand brake, and that the key which secured the drum appliance to the shaft was out of repair. Just how this brake operated, and the use and character of the key, and its condition as to repair, were fully explained to the jury by the witnesses. There was no necessity for them to give to the jury their opinion as to the safety of the hoist, for the jury were as capable of determining that fact from the evidence in the case as were the witnesses themselves. Sappenfield v. Main St., etc., Ry. Co., 91 Cal. 48, in some of its features is much like the case at bar, and it was there held that, when the question to be determined is the result of common experience, or is to be inferred from particular facts which are fully before the jury, the inference from those facts is to be drawn by the jury, and not by the witnesses."

Dr. Sappington did detail to the jury the results of his tests. All of this was before the jury.

[11] By the thirteenth assignment, appellant complains of the refusal of the court to charge the jury upon the question of unavoidable accident. There is no merit in this complaint. There was no evidence calling for the submission of such charge.

Mrs. J. A. Green, called as a witness by appellee, was asked by counsel for appellee, on redirect examination, the following questions:

"If there was a third statement made by you, or written for you to sign, do you remember where it was made, and for whom you made it?"

In answer to this question, she replied:

"The first statement that I ever made at all was made in the Insurance Company's office the afternoon of the accident. That was the first statement, but they overlooked a bet, and didn't have that one written. So therefore they were hot on the trail to get a written statement."

Counsel for appellant object to this answer alone upon the ground that such answer was not called for by the question propounded. Upon this objection being made, the court instructed the jury not to consider that portion of the witness' answer wherein she stated that the Insurance Company was hot on the trail of the witness.

By the fifteenth assignment, it is insisted that the court erred in permitting the answer of Mrs. Green, because not responsive to the question asked by counsel for appellee, and that he further erred in withdrawing from the consideration of the jury a portion only of the answer, and in not withdrawing the whole answer.

[12] As already shown, the only objection made to the answer of the witness was that it was not responsive to the question propounded by the adversary of appellant. There was no suggestion that the answer was in any manner hurtful to appellant, and we are therefore of opinion that the court was not called upon to exclude the same from the consideration of the jury, or any portion thereof. The court, however, qualified the bill of exception taken by appellant with reference to this complaint, as follows:

"Approved with this qualification: That if any request for a more complete withdrawal of the testimony objected to had been requested it would have been granted; it was certainly in the mind of the court that all objectionable evidence had been stricken out, and, if defendants were not satisfied, they should have made it known at the time. The testimony was not, from the viewpoint of the court material to any ultimate issue in the case which was submitted in the special issues.

"H. C. Hughes, Judge."

The fifteenth assignment is overruled.

Upon cross-examination, counsel for appellant asked Mrs. Green, witness for appellee, the following question: "Did anybody representing the American National Insurance Company ask you to come up here and tell anything except the truth?" To which she answered, "No, sir." Counsel for appellee then made the following statement:

"In the light of the question just asked you by the counsel for the defense as to what anyone claiming to represent the American National Insurance Company said to this lady, and basing my question on account of that one having been asked, I would now ask the witness: Whether or not her doctor, Dr. Edwards, claiming to represent the American National Insurance Company, in so doing, met her and her husband, * * * and offered her $10 to come to the American National Insurance Company building for something with reference to her testimony."

Counsel for appellant objected to this latter question, upon various grounds, in answer to which the court said:

"I will sustain the objection for the present. Gentlemen of the jury, you are not to consider the question as asked, as I have ruled that, in the state of the record now, the question is improper, and you will not consider the question asked."

The question was not answered.

By the sixteenth assignment, it is insisted that the question was a wrongful and hurtful imputation to appellant, and that its injurious effect was not removed by instructions of the court.

[13, 14] There is no merit in the assignment. We think, under the circumstances, the question, if asked in good faith, was admissible, and that counsel was within his right in propounding the same. In any event, appellant is in no position to complain, since its counsel invited such question by his question just preceding it, and for the further reason that the court instructed the jury not to consider the question in arriving at their verdict.

Finding no error in the trial of the cause, the judgment is in all things affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant has filed its motion for rehearing and insists that we erred, first, in finding that the plaintiff Nussbaum testified that, for several years preceding his injuries, his earnings had been approximately $20,000 per year; second, that we erred in finding that the undisputed evidence clearly shows that the accident occurred practically as claimed by appellee, and as testified to by himself and his witness, Mrs. Green.

After a re-examination of the statement of facts, we find that the complaints made are justified. We do find, however, that the plaintiff did testify that, during the year preceding his injuries, his earning capacity was approximately $20,000, and that it is shown by the great weight and preponderance of the

evidence that the accident occurred practically as claimed by appellee, and as testified to by himself and his witness, Mrs. Green.

With these corrections, the motion is refused.