CASE 67—ACTION FOR DEATH—OCTOBER 15.

# Louisville & Nashville R. R. Co. v. McGary's Administrator.

### APPEAL FROM HOPKINS CIRCUIT COURT.

1. DEATH BY NEGLIGENCE—FAILURE OF PROOF.—In an action by the
administrator of a brakeman against a railroad company to
recover damages for his intestate's death resulting, as alleged,
from a defective track, plaintiff is limited to proof of the
alleged negligence; and proof that after the wreck the ends
of the ties seemed rotten, is not sufficient to support his
action.

2. SAME—ALTERNATIVE CAUSES—PEREMPTORY INSTRUCTION.—Where,
from the proof, the accident may have resulted from either of
two causes, the one fixing the defendant's liability and the
other consistent with its innocence, a peremptory instruction
to find for the defendant is proper.

B. D. WARFIELD FOR APPELLANT. (H. W. BRUCE, WM. LINDSAY
AND GORDON & GORDON OF COUNSEL.)

1. The verdict of the jury is not sustained by sufficient evidence
and is contrary to the evidence.

2. A peremptory instruction should have been given. Citations:
Hughes v. Cincinnati, &c. R. R. Co., 91 Ky., 526; Cotton v.
Wood, 8 Com. B., N. L., 568 (Thompson on Negligence, 364);
Johnston's Admr. v. E. T., V. & G. Ry. Co., 17 Ky. Law Rep.,
67; Wintuska's Admr. v. L. & N. R. R. Co., 14 Ky. Law Rep.,
579; Nance's Admr. v. N. N. & M. V. Co., 13 Ky. Law Rep., 554.

GORDON & GORDON, ALSO FOR APPELLANT. (B. D. WARFIELD
AND H. W. BRUCE OF COUNSEL.)

Citations.  Nance's Admr. v. N. N. & M. V. Co., 13 Ky. Law
Rep., 554; Bailey on Master's Liability for Injuries to Servant,
pp. 151-152.

JAMES BREATHITT, W. T. FOWLER AND PETRIE & DOWNER
FOR APPELLEE.

Citations: Con. of Ky., sec. 241; Ky. Stats., sec. 6, p. 172; Slater
v. Sherman, 5 Bush,, 206; Louisville, &c. R. R. Co. v. Maho-
ney's Admx., 7 Bush, 235; Dr. Wigglesworth's Table, No. 2, 3
Bush, 12; O'Donnell v. O'Donnell's Exr., 3 Bush, 216; Alex-
ander's Ex. v. Bradley, 3 Bush, 667; Greer v. L. & N. R. R.
Co., 14 Ky. Law Rep., 876; L. & N. R. R. Co. v. Helly's
Admr., 100 Ky., 421; 19 Ky. Law Rep., 69; Same v. Ritter's
Admr., 2 Ky. Law Rep., 385; Thompson on Negligence, 2
vol., pp. 958 to 987; Shearman & Redfield on Negligence (latest
Ed.), 2 vol., secs. 406, 407 and 411, and notes thereto; Derby's
Admr. v. Ky. Cen. R. R. Co., 9 Ky. Law Rep., 153; Ohio
Valley Ry. Co. v. Watson's Admr., 93 Ky., 654; 14 Ky. Law
Rep., 611; L. & N. R. R. Co. v. McCoy, 81 Ky., 403; Same
v. Berry's Admx., 16 Ky. Law Rep., 722; Same v. Morris'
Admr., 14 Ky. Law Rep., 466; McClurg v. Igleheart, &c., 17
Ky. Law Rep., 917; Jones v. Wocher, Richie & Hanford, 90
Ky., 230; Trent v. Colvin, 18 Ky. Law Rep., 173; Clemmons
v. Com., 18 Ky. Law Rep., 485; L. & N. R. R. Co. v. Connelley,
9 Ky. Law Rep., 993; Carlin, &c. v. Baird, &c., 11 Ky. Law
Rep., 932; Mutual Life Ins. Co. of N. Y. v. Thomson, 94 Ky., 253;
14 Ky. Law Rep., 800; L. & N. R. R. Co. v. Graham's Admr., 98
Ky., 688; 17 Ky. Law Rep., 1229.

Statement that verdict is contrary to law is too general—not
a good ground for a new trial. American Ins. Co., of N. Y. v.
Austin, 18 Ky. Law Rep., 632.

Verdict sustained by evidence. Com. v. Hall, 18 Ky. Law.
Rep., 783.

Measures of damages. Chesapeake & Ohio Ry. Co. v. Lang's
Admr., 100 Ky., 221.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

The appellee brought suit against appellant company, al-
leging that his intestate, who was a brakeman, received
injuries, from which he died, while engaged upon a freight
train of appellant; that the "train was thrown from the
track near Robard's station, in Henderson county, Ken-
tucky, and the said C. C. McGary received serious bodily

injuries, from which he died;  . . .  that twenty-two cars were thrown from the track in the said wreck, and that the derailment of said train was caused by the defective condition of the roadbed at the point where said train was thrown from the track; that there had been, a few days prior to said accident, a slipping of the earth or roadbed from under the track, and that on the day of said accident the section boss and hands were at work at said point; that, in addition to the defective condition of said roadbed, the right of way at said point had grown up with weeds and bushes close up to said railroad tracks, and that old logs and cross-ties were piled up close to said road, and that said train at said time was running at a dangerous and reckless rate of speed, and came in contact with a yearling calf, which could not be seen on account of said bushes, weeds, and logs.  The plaintiff charges that said accident was caused by the gross negligence of said defendant, its agents and servants, in not keeping said roadbed in a safe condition, and by the gross negligence of the agents and servants of the defendant superior to plaintiff's decedent in authority, in the running of said train at a dangerous and reckless speed at the point of said wreck, and over and upon said calf, and upon allowing said weeds, bushes, and logs to lie so near the roadbed as to obstruct the view of said agents and servants who operated said train.  The plaintiff says that the condition of said roadbed had been well known to the defendant, and its servants and agents, for some days prior to said accident, and in sufficient time to have put said roadbed in safe condition prior to said accident; and he further charges that the dangerous condition of said roadbed was well known to defendant's agents and servants, whose duty it was to keep said roadbed in proper condition, and that its dan-

gerous condition was known to them for sufficient length of time to have put same in repair in time to have avoided said accident and injury to the plaintiff's decedent; and he further charges that the dangerous and unsafe condition of said roadbed was well known to the agents and servants of the defendant in charge of and running said train, and who were superior in authority to said decedent." By an amended petition, the plaintiff said that he was in error in stating that, at the point where his intestate was injured, weeds and bushes had been permitted by defendant to grow upon the side of the track so as to obstruct the view of the operators of defendant's train; "but plaintiff now charges that at the point where said C. C. McGary was injured, and from which he died, that the track of defendant's road is straight for a great distance, and that there was nothing to prevent the agents of defendant who were operating said train from seeing any object on the track for a great distance at that point. Plaintiff further charges that a lot of cattle came upon defendant's track at or about said point of wreck, and defendant's engineer negligently failed to blow the whistle in order to scare said cattle from the track, and recklessly ran the engine and cars over one of said lot of cattle, and by reason of which, and the rotten and unsound condition of the crossties at said point, the rails spread, and the spikes were drawn from the rotten ties, and a number of cars were ditched or overturned, and in the said wreck said McGary received fatal injuries."

By the first paragraph of the answer all the material averments of the petition as amended were traversed. By the second paragraph it was averred that the derailment of the cars and the accident to plaintiff's intestate "was caused by a yearling calf coming upon its track immedi-

ately in front of its engine, and so near to the same that it was impossible, from the time it so appeared upon the track, for its engineer and trainmen to check the train or stop it and prevent striking the same; that its said engine did strike and run over said calf, and that the body of same went under its engine and cars, and caused the cars to jump the rails and leave the track; that it was impossible from the time the engineer first saw the calf upon the track, or saw that it would come upon the track, by reason of its nearness to him, to stop or check the train or avoid striking it; that the coming of the calf upon the track was not or could not have been foreseen nor expected in time to have avoided striking it, and the consequent derailment of its train; that the running over of the calf and the derailment of the train was unavoidable; that the injury, suffering, and death of plaintiff's intestate was caused under and by these facts and circumstances, and was unavoidable."

By the reply, appellee stated "that he does not know to what extent the wreck of defendant's train in which the said C. C. McGary received injuries that resulted in his death was caused by the calf, which defendant admits was struck by its said train, and over which said train or a portion of same passed on that occasion. He believes that the running over said calf by said train, as described in defendant's answer, did cause in part said wreck, and the subsequent injuries to plaintiff's intestate, but he denies that said wreck, and the injuries to plaintiff received therein, were caused alone by said striking and running over said calf." After a denial that it was impossible for the engineer to have checked the train in time to prevent striking the calf, the reply continues: "He denies that the

running over said calf as aforesaid by itself caused the cars to jump the rails and leave the track, although that did, as he believes, help to produce that result."

It will be observed from the pleadings that the original theory of appellee that the accident was caused in part by permitting weeds and bushes to grow so near the track that the engineer could not see cattle about to come upon the track was abandoned, and the right to recovery was sought to be established upon the ground—First, that the roadbed was in a defective condition by reason of a slipping of the earth from under the track prior to the accident, of which appellant knew or could have known; and, second, that the engineer negligently failed to give the cattle alarm when he saw, or should have seen, cattle upon the track in front of his engine. At the conclusion of appellee's testimony a peremptory instruction was asked for and refused, and it is mainly upon this refusal, and upon the ground that the verdict was flagrantly against the evidence, that a reversal is now sought of the judgment which was rendered against appellant.

No evidence was introduced by appellee to show that the engineer failed to give the cattle alarm for cattle which appeared upon the track, but upon the contrary, several of appellee's own witnesses proved that he gave such alarm. Nor was any evidence introduced to show that the train was running at a dangerous or unusual rate of speed. The case turned—and, by the instructions, was made to turn—solely upon the question whether the roadbed was in a defective condition at the time of the accident. Upon this point the testimony introduced on behalf of appellee tended to show that the track was in good order, with perhaps one exception, to be noted hereafter. A fellow brakeman of the intestate, no longer an

employe of the company, testified that the cattle alarm
was given and brakes called for by the engineer, and that
he saw a cow standing some distance ahead of the engine,
beside the track; that after setting a brake he saw the
cow go off the track, and immediately thereafter he saw a
car turn across the track, "and from that on the wreck
commenced," the other cars piling up against it, the train
then running at the usual rate of speed—between twenty-
five and thirty miles an hour.   This witness testified that
the passenger train had passed over this track a few min-
utes before; that he had ridden over this track on his train
on that same morning, and the track seemed all right.   Of
the other witnesses for appellee, those who were in sight
of the wreck at the time it occurred testified to the cattle
alarm being given, and all testified as to a part of the re-
mains of the calf being found where it was struck, while
the hide and a part of the shoulder had been carried with
the truck of one of the cars to a point near where the
wreck occurred, a distance of from forty to sixty yards.
Their testimony showed that seven or eight cars had been
piled up together; that the rails were bent and torn loose;
and that some rails, with the ties attached to them, had
been slipped to the west side—the side upon which most of
the cars went off.   Upon the west side it appeared that the
embankment had been considerably torn away.   The only
evidence which, in any sense, could be construed as tending
to show that the track was in bad condition before the
wreck, was the statement of the witness Eakins, who was
asked: "Please state the condition of the cross-ties, and
the place where they had slipped, and where the track was
torn up; I mean their condition as to soundness or the re-
verse," to which he answered: "Some of them were not
very sound; I did not examine them very closely; they were

old ties; a good many were mashed up;" and the statement of the witness, Henry A. Book: "The ties—some of them —seemed to be a little decayed on the .ends where the trucks cut them off."

Is this sufficient evidence to support a verdict obtained solely upon the ground that appellant company's track at that point was in bad condition before the wreck, of which condition it knew, or by the exercise of reasonable care might have known, in time to have taken measures to prevent the accident? We think not. The fact that some of the ties under the wreck seemed to a witness not to be very sound, upon a very cursory examination—or, rather, upon mere casual observation—is not evidence, in our judgment, in support of the proposition that the track was in a defective condition at that point before the wreck. This same witness states that a good many of them were mashed up, and, as matter of course, they did not look as well in that condition as new ties freshly laid in a track. Nor does the fact that the witness Book states that some of the ties seemed to be a little decayed on the ends where the trucks cut them off show that they were unsound where the rails were spiked to them. It is matter of common knowledge that ties might be decayed on the ends, and yet perfecty sound, where soundness was necessary. This being so, we are forced to the conclusion that there was no evidence before the jury that the track, at the point where the wreck took place, was in a dangerously defective condition of which the company knew, or, by the exercise of reasonable diligence, could have known, in time to prevent the accident.

The burden was upon the plaintiff to show the negligence averred. Instead of showing facts from which the negligence averred on the part of the company might reasona-

bly be inferred, he has presented a state of facts from which we may, with equal plausibility, infer either negligence or reasonable care on the part of the company. Under this state of fact, as the pleadings appear in this case, the verdict appears to us to be flagrantly against the evidence. Hughes v. Railroad Co., 91 Ky., 531 [16 S.W., 275]; Wintuska v. Railroad Co. 14 Ky. Law Rep., 579 [20 S. W., 819]; P., C. & St. L. Railway Co. v. Lewis, 18 Ky. Law Rep., 957 [38 S. W., 482]; Johnson v. E. T., V. & G. Railway Co., 17 Ky. Law Rep., 67 [30 S. W., 415.] The case of L. & N. Railroad Co. v. Ritter, 2 Ky. Law Rep., 385, has no application to the case at bar, for in this case the plaintiff presented a definite issue of negligence, of which the appellant company was averred to have been guilty in a particular specified manner. Having elected to specify wherein the negligence consisted upon which he bases his claim for recovery, he can not, under these pleadings, recover by showing a different character of negligence. See McCain v. L. & N. Railroad Co., 13 Ky. Law Rep., 334. And in Greer v. L. & N. Railroad Co., 94 Ky., 169 [21 S. W., 649], it was held to be error to admit evidence as to acts of negligence in addition to those averred in the pleadings. So, granting that the derailment of the train, resulting in the death of plaintiff's intestate, was evidence from which negligence might be presumed, it nevertheless does not support the averment in the petition of negligence in permitting the track to remain in an unsafe and dangerous condition. For the reasons given the judgment is reversed, and the cause remanded, with directions to award appellant a new trial, and for further proceedings consistent with this opinion.