**Melvin K. HURST, Jr., Plaintiff-Appellant,**

v.

**S. H. KRESS & COMPANY et al., Defendants-Appellees,**

**Aetna Insurance Company, Intervenor-Appellant.**

**No. 73-1075.**

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1974.

W. S. Barron, Jr., Ray Besing, Dallas, Tex., for Hurst.

Robert M. Greenberg, Bill Brice, Dallas, Tex., for Intervenor.

Lucian Touchstone, Dallas, Tex., for defendants-appellees.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

WISDOM, Circuit Judge:

As this case demonstrates, special interrogatories are a mixed blessing.

In this personal injury suit, brought by the plaintiff-appellant, Melvin K. Hurst, Jr., against the defendants-appellees, S. H. Kress & Co., G. K. Properties, Inc., and Genesco, Inc., the jury returned a verdict in the form of answers to special interrogatories. One of the answers found that Hurst had "fail[ed] to keep a proper lookout" at the time of the accident in which he had suffered injury, and that "such failure was a proximate cause" of the injuries he suffered. On the basis of this part of the verdict, the trial judge entered judgment for the defendants. On appeal, Hurst and his co-appellant, intervenor Aetna

Insurance Co.,[1] attack the judgment on three grounds. They contend: (1) that the answer to the lookout question was not supported by sufficient evidence, and that the trial judge therefore erred in denying the plaintiff's motion for judgment notwithstanding part of the verdict; (2) that the lookout answer is in irreconcilable conflict with one of the other answers returned by the jury, finding that "the manner in which Hurst proceeded at the time and place in question was [not] negligence" and that "such negligence was [not] a proximate cause of his injuries"; and (3) that an affidavit signed by all twelve jurors after the return of the verdict established that the answer in question did not reflect the true intent of the jury,[2] and that a new trial is therefore required. We agree with the first of these contentions, and therefore we reverse the judgment of the district court without reaching the other two contentions.

I.

Hurst's injury occurred when Hurst fell from an equipment room on the fourth floor of Kress's downtown Dallas

1. Aetna is the workmen's compensation carrier under the Texas Workmen's Compensation Law for the National Chem-Search Corporation, for whom the plaintiff was working when he sustained the injuries in question here. Aetna joined in the plaintiff's complaint in the trial court, and Aetna and Hurst have proceeded as a single appellant in this case.

2. The affidavit recited that the jury had argued over whether an affirmative answer to the proper-lookout question would result in defeating the plaintiff's right to recover. The affidavit stated that the question had been resolved when one of the jurors, Mrs. Jean Pate, told her fellow jurors that she did not think an affirmative answer would defeat recovery; she based her opinion upon prior experience as a juror. The affidavit also said that some members of the jury had wanted to request clarification from the Court on the question, but that one of the jurors had said that the Court would refuse clarification on the matter. The affidavit stated that the jury had voted its verdict on Question No. 7 in reliance on the representations made by this (unidentified) juror and by Mrs. Pate. Finally, the affidavit said that it was Mrs.

Pate who had "taken the initiative to contact us" (the jurors) for the purpose of presenting it to the Court. The affidavit stated at the outset that it was made "to inform the Court of a mistake recorded in the Jury Verdict and to prevent an injustice that this error has inadvertently created".

In response to this affidavit, the defendants procured three affidavits, each signed by one juror. These three affidavits were nearly identical in substance. All recited that the "twelve jurors intended to answer [the proper lookout question] as it was answered", and noted that though "it is possible that some of the other jurors felt that . . . though they answer [as they did, Mr. Hurst] might still recover some compensation but, as stated, there is absolutely no doubt but that all twelve jurors voted [the] answer . . . that Mr. Hurst did fail to keep a proper lookout". After these three affidavits had been filed, the district judge entered an order prohibiting further contact with jurors for the purpose of securing affidavits concerning the verdict.

These affidavits obviously present a troubling situation but, as we note in the text, our view of the case makes it unnecessary to enter into any questions they may pose.

dimestore to the floor of another equipment room immediately below on the third floor.[3] The plaintiff at the time was a salesman for the National Chem-Search Corporation, a company that sells a chemical used to prevent corrosion and that the formation of algae in air-conditioning equipment. On the day of the accident, Hurst had come to Kress store to service the air-conditioning equipment located in the fourth floor equipment room. Hurst went up to the fourth floor unaccompanied by any Kress personnel. This was a standard practice followed by Hurst and another National Chem-Search salesman, as well as by the employees of other companies responsible for servicing Kress's air-conditioning equipment.

The physical conditions relevant to this case were reproduced by means of a scale model prepared by a consulting engineer from plans and blueprints of the store as well as from physical inspections of the premises. This model was presented at trial, and displayed to this Court at oral argument. Briefly summarized, the relevant conditions were these. In the northeast corner of the fourth floor equipment room were two adjacent and identical doors. One, on the northern wall of the room, was the door leading from the equipment room to the stockroom occupying the rest of the store's fourth floor. It was through this door that one usually passed when entering or leaving the equipment room. The other was situated at a ninety-degree angle from this first or "outside" door; this second or "inside" door was on one's immediate right as one entered the equipment room from the stockroom. This door opened into a void dropping down to the third floor equipment room. There was a steel ladder, positioned at a 65-degree angle, on the third floor below leading from that floor to the fourth floor. The two doors were identical in appearance, and their knobs were only six inches apart.

The "inside" door was unmarked and unlocked. The area in the corner of the equipment room was dark when anybody entered or left the room, because the only light in the equipment room was an overhead light operated by a pull-cord droplight in the center of the room, and the corner was shielded from what little light came into the room through the windows.[4] The areas into which both doors opened were also completely dark; the door to the stockroom opened into an aisle shielded off from light by a partition wall. The policy of the company was to require that the lights be turned off except when the room was being used.

The physical facts suggest and the jury could have reasonably inferred that the accident occurred when Hurst fell to the third floor through the "inside" door of the fourth floor. Hurst testified that his memory was considerably impaired as a result of the accident, and that he did not recall exactly how the accident had occurred. He remembered going to the Kress store, talking to someone in the manager's office, proceeding up the elevator to the fourth floor, getting off there, and walking toward the equipment room. After that, he testified, he remembered nothing until he regained consciousness, two weeks after the accident, in Baylor Hospital. Hurst was found between four and five on the afternoon of the accident, lying face up, at

3. The defendant-appellant Genesco, Inc., is the owner of the building housing the Kress store, although the building is occupied, maintained, and under the control of Kress. The connection of the defendant-appellant, G.K. Industries, Inc., to this suit, has not been made clear. It is not explained in the appellant's brief, and is not specified by the Plaintiff's Third Amended Complaint. However, G.K. Properties does not appear to have formally challenged its joinder in this suit in the trial court, and does not contest its joinder here. In their brief, the defendants-appellees confine their remarks on the matter to the statement that "[t]here was no showing as to any connection of G.K. Properties, Inc., to this lawsuit" in the trial court.

The three defendants-appellees have proceeded as a single appellee on this appeal.

4. Indeed, the darkness in this area was so complete that a light intensity meter would not even register.

the bottom of the steel ladder. The pages of a National Chem-Search presentation catalogue Hurst carried with him were found scattered on the stairway and the floor below.

The engineer who had designed the model of the premises, had spent thirty years at accident investigation and reconstruction work. He testified at trial as to the position in which a man would be likely to be found if he took one step into the door by the steel ladder and then fell to the floor below. The position in which Hurst was found conformed exactly to the description given by the engineer.

As a result of the accident, Hurst suffered severe injuries, and will be a paraplegic the rest of his life.

The answers to interrogatories returned by the jury after trial were all favorable to the plaintiff, except the one answer concerning Hurst's failure to maintain a proper lookout. In answering the interrogatories, the jury found specifically: (1) that at the time of his injuries Hurst enjoyed the status of an invitee on the Kress premises; (2) that at the time and place of the accident Kress maintained a dangerous condition on its premises and that it knew or should have known of that condition; (3) that Kress was negligent in failing to correct or failing to provide a reasonable warning of the condition, and that this negligence on Kress's part was a proximate cause of Hurst's injuries; (4) that Hurst did not voluntarily assume the risk of the dangerous condition; and (5) that Hurst suffered damages amounting to $450,000 as a result of the accident.

The answers at issue on this appeal were the answers to Questions No. 7 and No. 8. Question No. 7 read: "Do you find from a preponderance of the evidence that Hurst failed to keep a proper lookout at the time and place in question and that such failure was a proximate cause of the injuries and damages suffered by Hurst?" The jury answered, "He did fail and such failure was a proximate cause". Question No. 8 read: "Do you find from a preponderance of the evidence that the manner in which Hurst proceeded at the time and place in question was negligence and such negligence was a proximate cause of his injuries and damages?" The jury answered, "It was not negligence or was not a proximate cause". The plaintiff's position, as noted above, is that the answer to Question No. 7 was not supported by any evidence; that the two answers are in such hopeless conflict that a new trial is required; and that the answer to Question No. 7 did not reflect the true intention of the jurors, as evidenced by the affidavit the plaintiff sought to present to the district court after the return of the verdict.[5]

■ In arguing that the evidence is insufficient to support the jury's answer to Question No. 7, the appellants rely upon the principle that contributory negligence may not be inferred from the mere fact that an accident took place. The place of that principle in Texas law is established by two cases the appellants cite. In Salter v. Galveston, H. & S. A. Ry. Co., Tex.Civ.App.1926, 285 S. W. 1112, the Texas Court of Civil Appeals stated:

> When the physical facts at the place of the accident . . . are looked to, they fail, we think, as against the presumption that always prevails, in the absence of evidence to the contrary, that one is not negligent [citation omitted] to furnish sufficient premises for such a conclusion. At most they seem to us to reflect a situation from which the inference that due care was exercised is just as reasonable as that it was not, and in such in instance the affirmative defense of contributory negligence is not made out. [Citations omitted.] And this rule of evidence applies alike with equal force to the two separate elements of the defense, that is, the actual existence of the remissness, and,

5. See note 2.

in the second, of its being the proximate cause of the injury . . . . 285 S.W. at 1113. In Dewhurst v. South Texas Rendering Co., Tex.Civ.App.1950, 232 S.W.2d 135, writ ref'd n.r.e. (Norvell, J.), the Civil Appeals Court took the same view in the context of a claim similar to the one asserted here, that the plaintiff had failed to maintain a proper lookout:

> After a careful examination of the statement of facts, we have come to the conclusions that there is *no evidence* supporting the jury's findings that Dewhurst was travelling at an excessive speed at the time of the collision or that he failed to keep a proper lookout. . . .
>
> While the testimony of Munoz [to the effect that the decedent kept a proper lookout] was not necessarily binding upon the jury, disbelief in his statement that the station wagon was moving slowly into the intersection is not evidence that the driver of the station wagon was travelling at an excessive rate of speed without maintaining a proper lookout. . . . "No such presumption prevails in this state that an injured person is guilty of contributory negligence merely because an accident happened, but, on the contrary, the rule is that it will be presumed that the injured person was in the exercise of due care for his own safety when the accident occurred." [Citation omitted.]
>
> It is also the rule that "contributory negligence is not established by evidence which is equally consistent with the exercise of the care by plaintiff, or where the inference of due care is just as reasonable as the inference of the lack thereof." [Citation omitted.]
>
> \* \* \* \* \* \*
>
> The law prefers a judgment based upon recognized rules relating to the burden of proof and legal presumptions rather than one based upon mere surmise and speculation.
>
> \* \* \* \* \* \*

We are not willing to subscribe to the theory that the mere showing that a collision occurred at an open country road intersection, in itself is sufficient to raise the issue of negligent failure to maintain a proper lookout. 232 S.W.2d at 137–139 (emphasis in original).

▪ In this case, as in *Salter* and *Dewhurst*, there was no evidence establishing a prima facie case either that the plaintiff failed to exercise ordinary care, or that the accident was the result of any such failure on the plaintiff's part. The evidence established only that Kress maintained a dangerous condition on its premises, and that Hurst's position when he was found, considering the nature of his injuries, was the position in which a man who had fallen from the top of the ladder would be likely to be found. This was not sufficient to permit an inference that Hurst had failed to keep a proper lookout. Indeed, it is even arguable that the evidence precluded a finding that Hurst failed to keep a proper lookout, for the evidence established that the area around the door was completely dark, and that the area behind each door was also completely dark. Since Hurst was proceeding in darkness, and expecting to encounter only darkness when he opened the door he expected to open, it is difficult to see how his keeping any kind of lookout could have made any difference.

▪ In their argument on this issue, the appellees lay primary emphasis on the fact that, because of Hurst's loss of memory, there was no direct evidence establishing or tending to establish specifically how the accident actually happened. Since this was the case, they argue that however the accident actually happened, if it was possible for the jury to find that Kress was negligent and that this negligence was a proximate cause of the injury it was equally possible to find that Hurst was negligent, or that he failed to keep a proper lookout, and that his failure was a proximate

cause of his injury. The former had to be proved by circumstantial evidence, the appellees suggest, and therefore the latter could be proved by circumstantial evidence.

This line of argument is unpersuasive. Neither the jury's finding that Kress was negligent nor its finding that Kress's negligence was a proximate cause required evidence establishing specifically how the accident had occurred. As far as the issue of Kress's negligence was concerned, the theory of the plaintiff's case was that Kress was negligent in maintaining, failing to correct, and failing to warn about, the dangerous condition. And there was direct proof of this, sufficient to establish negligence regardless of how the accident in fact occurred. As for proximate cause, a jury inference that Kress's negligence proximately caused the accident was entirely permissible. The maintenance of the dangerous condition was a cause in fact of Hurst's injury. To find proximate cause, the jury had to find only that maintenance of the condition was a "substantial factor" in bringing about the accident. This would have been true unless some unusual supervening cause —such as the plaintiff's suffering a blackout spell, or his jumping or climbing, to cite some of the more extreme examples suggested by the appellees— had broken the link between Kress's negligence and Hurst's injury. Finding proximate cause, then, did not require the jury to form a judgment as to how, particularly, the accident had occurred; it required merely that the jury exclude some of the more remote and speculative possibilities. This the jury was free to do without specific evidence showing precisely how the accident had happened.

The jury's finding that the accident was proximately caused by a failure of Hurst's to keep a proper lookout, on the other hand, did require the exclusion of possibilities that were not at all speculative—including, of course, the possibility that Hurst, entirely innocently, had taken the wrong doorknob, stepped into a darkness he expected to encounter, but

to his surprise had fallen to the floor below. The jury's excluding these possibilities constituted an inference that required an evidentiary bias. No evidence presented at trial provided such a basis, and the appellees have been unable to point to any such evidence in their argument before this Court.

Accordingly, we hold that the part of the verdict finding that Hurst failed to keep a proper lookout, and that his failure was a proximate cause of the injury, was not supported by the evidence. The plaintiff's motion for judgment notwithstanding that part of the verdict should have been granted. There is no reason therefore for us to reach the questions raised by the appellant about the apparent inconsistencies among the answers to the special interrogatories, and about the jurors' affidavit presented to the trial court after the verdict was returned.

The judgment of the district court is reversed, and the case is remanded with instructions to enter judgment for the plaintiff in the amount of $450,000.

GEE, Circuit Judge (concurring in part and dissenting in part):

Concurring as I do in much of the majority's lucid and closely-reasoned opinion, I must regretfully dissent from its holding that judgment should be *rendered* for Mr. Hurst and his co-plaintiff.

We hold here that there is no evidence of substance supporting a jury finding that in going through the wrong door and proceeding into darkness so intense that a light meter would not register in it, plaintiff Hurst failed to keep a proper lookout for his own safety. To me, the deliberate advance of a sighted man into an area where he cannot see may partake of keeping an improper lookout. With respect, I maintain the view that this is conduct which reasonable minds could find careless.

The jury also found, however, that " . . . the manner in which Hurst proceeded . . . " was not negligent. Since nothing about the manner

of his proceeding could well have been thought negligent except picking the wrong door and advancing into darkness —where he could not see what dangers might lie—I do not see how the two special findings can be satisfactorily reconciled.[1]

There was no general verdict for either side. What the jury meant by its special findings is to me unclear. I agree that the judgment should be reversed but think the interests of justice would be better served by a retrial.

---

1. Indeed, if forced to reconcile them I would be inclined to give the specific finding on lookout controlling effect over the more general one on the manner of Mr. Hurst's "proceeding." But this likely puts more pressure on the jury's reasoning than it should be made to bear.