**MISSOURI, K. & T. R. CO. OF TEXAS v. LONG.   (No. 7079.)\***

Court of Civil Appeals of Texas. Austin.
March 11, 1927.

Rehearing Denied March 20, 1927.

1. Railroads ⬳307(4)—Railroad is not required to maintain light at crossing unless unusually dangerous.

Lights are not required to be maintained by railroads at grade crossings, unless conditions are such that without light crossing would be rendered more than ordinarily dangerous.

2. Railroads ⬳348(3)—Finding of railroad's negligence in failing to maintain light at crossing held sustained by evidence.

In action for death of automobile driver colliding with passing freight car at crossing at night, evidence *held* to support finding of jury that crossing was more than ordinarily dangerous in nighttime, and that railroad was guilty of negligence causing injury in failing to maintain light.

3. Railroads ⬳307(4)—Lights required where crossing was unusually dangerous because of traveler's inability to observe train.

Electric signals or lights could be required at crossings which were more than ordinarily dangerous, because of inability to see passing trains, for purpose of giving notice that highway was occupied by train, as well as for purpose of warning of train's approach.

4. Negligence ⬳122(1)—Injured person is presumed to have exercised due care.

No presumption arises that injured person is guilty of contributory negligence merely because accident happened, it being presumed that injured person was in exercise of due care at time accident occurred.

5. Negligence ⬳68—Ordinary care required of person injured is care man of ordinary prudence would exercise under circumstances.

Ordinary care required to be exercised by person injured is exercise of such care as man of ordinary prudence would have exercised under attending circumstances.

6. Railroads ⬳348(8)—Evidence held to support finding that motorist running into train was not contributorily negligent.

In action for death of motorist colliding with passing freight train at crossing, evidence *held* to sustain finding that deceased was not guilty of contributory negligence.

7. Railroads ⬳350(26)—Motorist driving into passing freight train at night held not contributorily negligent as matter of law.

Motorist *held* not guilty of contributory negligence as matter of law by colliding with passing freight train at unlighted crossing at night, where crossing was in depressed location of road and lights from nearby town were in motorist's line of vision, making crossing dangerous.

8. Railroads ⬳347(11)—Evidence as to difficulty experienced by other travelers in seeing passing trains held material.

In action for death of motorist colliding with passing freight train at night at unlighted crossing, jury could consider conditions surrounding crossing, its depressed location, lights from nearby town diverting driver's attention, and testimony of other persons as to difficulty in seeing passing trains at such crossing.

9. Railroads ⬳347(11)—Testimony that railroad track and crossing were dark, and automobile lights did not reflect at distance, held material.

Jury could consider testimony that highway, track, crossing, and box cars were of dark material, and that automobile headlights were required to be focused downward, preventing reflection upon crossing except at close range, in action against railroad for death of motorist colliding with passing freight train at night at unlighted crossing.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
\*Writ of error granted May 25, 1927.

**10. Railroads ⏾350(26)—Motorist held not contributorily negligent as matter of law for not having stopped within range train could be seen by headlights.**

In action for death of motorist colliding with passing train at night at unlighted crossing, deceased *held* not guilty of contributory negligence as matter of law for failing to control movement of car to enable halt within distance object might have been discovered in road by headlights, in view of evidence.

**11. Trial ⏾215—Refusing instruction constituting general charge held not error in action submitted on special issues.**

In action submitted on special issues, refusal to give requested instruction constituting in effect general charge *held* not error.

**12. Railroads ⏾307(4)—Railroad held charged with notice of conditions rendering unlighted crossing unusually dangerous.**

Where more than ordinarily dangerous crossing existed, which person of ordinary prudence would have lighted to protect traveling public, railroad was charged with notice of conditions; refusal to submit issue as to whether conditions were known being proper in action for death at crossing.

**13. Trial ⏾352(1)—Issue whether deceased stopped automobile within distance he could have discovered train's presence on road by headlights, omitting reference to negligence or proximate cause, held properly rejected.**

In action for death of motorist at railroad crossing from collision with passing train, issue submitting question whether deceased could have stopped automobile within distance that he could have discovered presence of train on road by headlights by use of ordinary care *held* properly refused as not calling for finding that facts constituted negligence or were proximate cause of injuries.

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Action by Mrs. S. H. Long, for herself, as widow, and for her children, against the Missouri, Kansas & Texas Railroad Company of Texas for the death of S. H. Long. Judgment for plaintiff, and defendant appeals. Affirmed.

C. C. Huff and J. M. Chambers, both of Dallas, and Tyler & Hubbard, of Belton, for appellant.

Winbourn Pearce and W. W. Saulsbury, both of Temple, for appellee.

BLAIR, J. S. H. Long was killed when an automobile he was driving ran into appellant's freight car passing over the grade crossing at the intersection of the Meridian highway and appellant's railroad, about 100 feet southeast from the city limits of Temple, Tex. His widow, for herself and their children, sued appellant for the resulting damages, alleging in substance that the Meridian highway was a much-used thoroughfare, and

that the crossing was a more than ordinarily dangerous one for all travelers, and especially so for automobile travelers in the nighttime: First, because it was in a depression and flat, the highway approaching it downgrade both from the east and the west; and, second, because only a few feet to the west of it electric lights in the city of Temple were constantly burning at night, and were faced by automobile drivers going toward Temple as deceased was, which conditions rendered it very difficult for them to see the crossing, or a freight train or other cars passing over it on a dark night in time to avoid running into them. Long's death was alleged to have been caused by the negligent failure of appellant to keep a light at the crossing so that travelers could see it, or see any freight train or other cars which might be on it in the nighttime.

Appellant filed a general denial and a plea that deceased was guilty of contributory negligence in several particulars which caused his death.

Four of the five issues submitted, and the jury's answers thereto, are as follows:

"1. Do you find from a preponderance of the evidence that the conditions surrounding the crossing in question were such as to render that crossing more than ordinarily dangerous as a nighttime crossing?" Answer: "Yes."

"2. Do you find from a preponderance of the evidence that the defendant, in failing to have a light at the crossing in question, was guilty of negligence?" Answer: "Yes."

"3. Do you find from a preponderance of the evidence that such negligence of the defendant was a proximate cause of the injuries to the deceased, S. H. Long?" Answer: "Yes."

"4. Do you find from a preponderance of the evidence that the deceased, S. H. Long, failed to keep a proper lookout, or was driving a car with insufficient headlights, or with insufficient brakes, or was driving the automobile at a high rate of speed, without sufficient brakes to stop the car within the distance the headlights would light the road; or that he failed to stop the automobile within the distance he would have discovered the presence of the train on the road by the headlights in the exercise of ordinary care; and that in either of said particulars, he was guilty of contributory negligence?" Answer: "No."

By the fifth issue the jury found damages in the sum of $17,500, for which sum the court rendered judgment for appellee.

[1] The appeal is predicated upon sixteen propositions, eight of which, Nos. 1, 2, 3, 5, 6, 10, 11, and 12, complain in one way or another that the jury's answers to issues 1 and 2 are without any evidence to support them, or to sustain the judgment based thereon. That is, it is contended: First, that there is no evidence showing a more than ordinarily dangerous nighttime crossing; and, second, that "since the laws of the state do not require lights to be maintained at grade cross-

ings of public roads and railroads * * * unless conditions were such as that without a light the crossing would be thereby rendered more than ordinarily dangerous," appellant was therefore not guilty of negligence for failure to maintain a light. These propositions correctly state the tests or rules which fix liability and control the case.

The Supreme Court held, in M., K. & T. R. R. Co. v. Magee, 92 Tex. 616, 50 S. W. 1013, that—

"If that particular place was so peculiarly dangerous that prudent persons could not use the public road in safety, unless the company employed * * * extraordinary means, * * * then, in such event, it was incumbent [upon the company] to employ such extraordinary means."

In the case of Tisdale v. Ry. Co. (Tex. Com. App.) 228 S. W. 133, it is held:

"Whether or not any given state of facts describing the surroundings of any particular crossing are such as to mark such crossing as one attended with unusual danger on extraordinary hazard is a question solely for the determination of the jury, unless only one conclusion could be drawn therefrom by all reasonable minds."

The authority 33 Cyc. 944, holds:

"Whether or not it is negligence to fail to provide such flagman, lights, or gates is a question for the jury, depending upon the circumstances of the particular case."

[2] The eight propositions under consideration simply attack the sufficiency of the evidence to support the verdict and judgment, admitting the tests or rules announced as the proper ones to fix liability. We are clear in the view that while the evidence may not conclusively establish a more than ordinarily dangerous nighttime crossing, it abundantly supports the jury's finding that it is so; and also supports the jury's finding on the issues of negligence and proximate cause.

"In determining whether the evidence is sufficient, an appellate court must reject all the evidence contrary to the verdict and consider only evidence sustaining it." Fort Worth Benev. Assn. v. Jennings (Tex. Civ. App.) 283 S. W. 910; also, Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696.

The Meridian highway is a main thoroughfare traversing this state, and is much used for all kinds of travel, and especially for automobile travel. The crossing here involved intersects appellant's tracks practically at a right angle, and is about 100 feet southeast from the city limits of Temple. The only signal, notice, or devise maintained by appellant at this crossing to warn the traveling public of the proximity of the crossing, or of a freight train or other cars that might be passing over it in the nighttime, is the ordinary cross sign required by statute to be maintained at all grade crossings. It is located to the right of the highway and served but little purpose, if any, as a warning to automobile travelers in the nighttime either of the proximity of the crossing, or that unlighted freight trains or other cars might be passing over it. The crossing is in a depression or flat, the highway approaching it downgrade both from the east and west, as is shown by the following drawing:

Both the drawing and the testimony show that automobile travelers, going toward Temple as deceased was, face north until within about 700 feet of the crossing, where they turn west. At this point the highway grade is 10.25 feet above the level of the crossing.

The grade is then downward to within about 200 feet of the crossing, where it becomes flat or level with it, and continues so over and west of the crossing about 100 feet, where it again rises and continues upgrade about 800 feet to a right-hand turn into a street in Temple, and at this point reaches a height of 23.2 feet above the level of the crossing. Located on this high elevation are various electric lights in the city of Temple, such as porch, garage, and street lights, which constantly burn at night, and which are directly faced by an automobile driver immediately upon his making the turn to the west, the lights being then about 1,500 or 1,800 feet away. So that when these lights are first faced the driver's direct line of vision is from an elevation of 10.25 feet plus the added height to his position in the automobile to the lights on the high elevation west of the crossing, the lights being 23.2 feet plus the added height to where they are hung or fixed, over and above the level of the crossing, and this, of course, causes him to look at them above and over the crossing and above and over any freight train or other cars that might be passing over it.

More than 20 witnesses, peace officers, doctors, farmers, a minister, and several business men who live in or south of Temple, some of them having used the crossing for many years, testified to the condition detailed, and further that immediately upon making the turn to the west and to the crossing an automobile driver's attention is in some manner attracted to these lights which he directly faces. Some of them thought that the halo of light beyond and above the level of the crossing, though not blinding, in a way accentuated the darkness of ￵the depression and flat through which the railroad tracks ran. Others expressed the view that men are naturally prone to look at the lights of a city as they are approached from a distance, and that bright lights on a dark night ordinarily attract the attention of men to them. They also. testified that just at the moment the automobile driver's attention is first attracted to these lights, he immediately turns downgrade, and continues so until within a very short distance of the crossing; and that these conditions, and the further fact that the state laws require headlights on automobiles to be focused downward, render it very difficult to see either the crossing, or a freight train, or other cars passing over it, until so close that it is very difficult to stop in time to avoid running into them on a dark night. The highway is constructed with tarvia topping, which is a dark material. The box car into which the deceased ran was dark in color. The freight train of which it was a part was composed of 60 cars, all of which were dark in color. The automobile swerved to the right, but the left side of it collided with the sixteenth box car from the caboose or end of the train, the caboose being about 640 feet from the crossing at that time. The engine with its headlights focused in the opposite direction, and 44 cars had passed over the crossing, and at the time of the accident the engine was about 2,000 feet south of it. The night was dark, and deceased had never before traveled the road. Many of the witnesses testified that notwithstanding their knowledge of these conditions, they had by reason of them on dark nights, and under similar conditions as confronted deceased, almost run into freight trains or box cars passing over this crossing. The witnesses also testified that on dark nights, and because the highway was downgrade to within a short distance of the crossing, and because the headlights of an automobile are required to be focused downward and do not shine upon any part of a train or other cars on the crossing except the wheels, and on the wheels only for a short distance, it is very difficult to stop in time to avoid running into such train or cars. Deceased lived a few hours after the accident, and his wife testified to the following statement made by him:

"He said he was coasting downgrade and was going very slow, and his first knowledge of the train was the wheels, was all he seen, and he turned so quickly to the right that the crossing sign was so close that he couldn't miss it."

The owner of the automobile who was riding on the front seat to the right, deceased being to his left and driving, testified:

"It seemed to me like when we were within about 20 or 30 feet of that railroad, I just saw some wheels rolling along on the ground, and I said to the driver, 'Look out,' and it seems that he saw it about the time I did, and he just turned to the right and the cars hit us. * * * The first thing I noticed was the wheels of the freight train. I had been looking out the front all the way, and I didn't see the box car; just saw the wheels is all that I saw. I didn't hear the train as we approached the cars and didn't see any light as we approached the cars. * * * I don't think we were driving fast; a moderate rate is what I would call it. We were coasting down that hill, and it seemed to me like the car had slowed up. * * * I think my brakes were in perfect condition, as good as any I have had. I had been driving the car, and I had never thought there was anything wrong with the brakes holding. My lights were burning. My lights had·been inspected by the state officials of the state of Texas for that year. I have a certificate I refer to."

"They were pretty good lights, fairly good lights. I can't tell you how far ahead they would throw a light. I never did anything to them myself. The lights were always good lights. * * * Both lights on the car didn't go out when we struck the train. One light continued to burn, and that, I think, was the one on the right-hand side. * * * As to whether I could have seen that train the last 200 or the whole 700 feet if I had had sufficient light on my car, will say, think I had good

lights on my car. I saw the wheels of the train, but I never saw any train until it passed by."

Appellant's safety department expert testified in substance that cities and towns by ordinance required railroad companies to maintain lights at grade crossings; that such lights do not serve any purpose to give warning of the approach of trains; but that they do serve the purpose to give notice of the presence of a train or other cars on a crossing.

The manager of an electric light company whose lines extended to within a few hundred feet of this crossing testified that an initial expense of $600 and $2 per month would maintain a light at the crossing. So we submit that the evidence fully supports the jury's verdict and sustains the judgment under the tests or rules above announced as fixing liability in this case.

[3] In this connection and by supplemental brief, appellant contends "that flagmen, electric bells, bars, and lights are never required by either written or common law to give notice that the highway is occupied by a train, but for the sole and only purpose of giving notice of approaching trains," and cites the following authorities of other states in support of the contention: Schmidt v. Chicago & N. W. Ry. (Wis.) 210 N. W. 370; Nadasky v. Public Service Ry., 97 N. J. Law, 400, 117 A. 478; McGlauflin v. Boston & Maine Ry., 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790; and Gilman v. Central Vermont Ry., 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102. If these cases hold as contended for by appellant that neither statutory nor common-law rules require the employment of "extraordinary means" to warn the traveling public of a "peculiarly dangerous" crossing, or of a train or other cars on it, they are in direct conflict with the decisions of our own courts, and should not and will not be followed. But a careful examination shows that in each case cited negligence was sought to be predicated upon the fact that statutory warnings such as crossing bells, wigwag bells, electric alarm bells, and wigwag signals with swinging red lights attached, were out of order when each complainant ran into the cars actually occupying the crossing; and in each instance it is held that, since these devices are by statutory provision or common-law construction "not for the purpose of warning travelers upon the highway of the actual presence of a train upon a crossing, but for the purpose of warning of the approach of a train," recovery of damages should be denied. In neither of these cases is it alleged that the crossing was more than ordinarily dangerous or peculiarly dangerous requiring the employment of "extraordinary means" for the safety of the public using it, and therefore furnish no authority for this case. According to the undisputed evidence, a crossing light, such as the jury found should have been maintained by appellant at this more than ordinarily dangerous crossing, would in no way serve or contribute to warn travelers on the highway that a train was approaching. But according to the undisputed testimony such a crossing light would serve or contribute to warn travelers on the highway in the nighttime of the proximity of the crossing and that it was occupied by a passing freight train or other cars. Common knowledge teaches that such a light would serve these purposes. Cities and towns require such crossing lights to be maintained within their limits for the purpose of warning travelers of the proximity of grade crossings or of any train or cars that might be passing over them. Indeed, the Gilman-Railway Case, last above cited and particularly relied upon by appellant, recognizes the tests or rules of liability applied in this case, for the court says:

"In order to charge the defendant with negligence, it must be found from some substantial evidence that [the defendant], in the exercise of ordinary care, should have known that, on account of the darkness" and of the unusual conditions surrounding this particular crossing, "the cars upon the crossing were such an obstruction that a person driving upon the highway approaching the crossing from the west, at a reasonable rate of speed, * * * properly equipped with lights and carefully operated, would be [likely] to come into collision with the train."

Or, as said in Gillham v. Railway Co. (Tex. Civ. App.) 241 S. W. 512, a Texas case:

"It seems to be the law that a duty on the part of a railway company to keep a watchman or resort to other extraordinary means to warn persons approaching the road crossing, does not exist unless the crossing is more than an ordinarily hazardous one."

To the same effect is the recent case of W. V. Ry. Co. v. Southern Casualty Co. (Tex. Civ. App.) 273 S. W. 680. A writ of error was granted in this case. An examination of the application for the writ shows this question was directly raised. The case was reversed on another ground not here involved. See, also, I. G. N. Ry. Co. v. Smith (Tex. Civ. App.) 269 S. W. 886; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485.

Closely akin to this last contention is appellant's fourteenth proposition, which reads:

"The evidence showing without conflict that deceased drove the automobile into the side of a freight train moving across and blocking the highway, and there being nothing to prevent deceased from seeing the train as he approached it, he was guilty of negligence per se proximately causing his death. * * *"

[4] This proposition assumes that because deceased ran into a box car actually blocking or occupying the crossing, he was guilty of contributory negligence as a matter of law. No such presumption prevails in this state that an injured person is guilty of contribu-

tory negligence merely because an accident happened, but, on the contrary, the rule is that it will be presumed that the injured person was in the exercise of due care for his own safety when the accident occurred. Or, as said in Salter v. Railway Co. (Tex. Civ. App.) 285 S. W. 1112:

"Under the well-settled authority, however, contributory negligence will not be presumed from the mere fact of accident or injury (Railway Co. v. Crump [Tex. Civ. App.] 212 S. W. 827) but the defendant must prove both that plaintiff was negligent and that such negligence was the proximate cause of the injury (Railway Co. v. Eaton [Tex. Civ. App.] 222 S. W. 318)."

Or, as said by the Supreme Court in Railway Co. v. Luten, 228 S. W. 159:

"The presumption that the deceased exercised ordinary care for his own protection, and did not voluntarily place himself in a position of peril, is proper to be considered by the jury as a circumstance weighing in favor of the contention of the plaintiffs, and may have been so considered by the jury."

Or, as said in Railway Co. v. Sterling (Tex. Civ. App.) 260 S. W. 320:

"What is due care under a given group of facts must be determined by the jury by applying the rule as to what, in their judgment, a man of ordinary prudence would have done under the attendant circumstances. It is reasonable that a sane man will not knowingly and recklessly expose himself to imminent bodily danger—that the instincts of self-preservation existed." · Hines v. Arrant (Tex. Civ. App.) 225 S. W. 767; Trochta v. M., K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; Cameron Compress Co. v. Whitington (Tex. Com. App.) 280 S. W. 527.

[5] The exercise of ordinary care was therefore the measure of duty imposed upon deceased; that is, the exercise of such care for his own safety as a man of ordinary prudence would have exercised under the attending circumstances. In the case of So. Traction Co. v. Kirksey, 181 S. W. 545, the Court of Civil Appeals held that where there was nothing obstructing the view of a person who ran his automobile into a traction car crossing a highway, he was guilty of contributory negligence as a matter of law. But the Supreme Court reversed this holding, 110 Tex. 190, 217 S. W. 139, from which decision we quote the following:

"Conceding that the physical conditions were such that as Kirksey approached said crossing he might have discovered the approaching trolley car in time to have avoided the collision had his thought and attention not been distracted by Deloach's signals to stop and his movement toward the automobile as it slowed its speed, there remained for the jury the question whether under all the facts and circumstances, including said distractions, a reasonably prudent person, in Kirksey's situation, would or would not have done substantially as he did."

[6-9] Appellant charged deceased with the several specific acts of contributory negligence submitted to the jury by special issue No. 4, supra, and we think that the evidence sufficiently supports the jury's finding that deceased was not guilty of either of the particular acts of negligence charged. The testimony is positive that the lights on the automobile were in "good shape," efficient, and had given no trouble. They had been examined only a few days before the accident by proper officials and had passed the test regulations required by law. The evidence is also without dispute, as shown by a test made after the accident and by positive testimony, that the automobile was properly and safely equipped with brakes sufficient to stop it within a reasonable distance and within a reasonable time. The only testimony with reference to the rate of speed at which the car was going was "that it was going very slow," or at "a moderate rate." In fact, the only evidence tending to show contributory negligence was that deceased, after swerving his automobile to the right, collided with the box car actually passing over the crossing. But that fact alone would not charge him with contributory negligence as a matter of law, because of the presumption of law that he exercised due and proper diligence for his own safety; and further because his conduct must be tested by that of an ordinarily prudent person under all the attendant facts and circumstances. That is, the conditions and circumstances surrounding the crossing, its location in a depression or flat between deceased and the lights which ordinarily attracted or diverted the attention of automobile drivers on a dark night; the fact that ordinary automobile travelers, farmers, doctors, business men, etc., found it very difficult to see the crossing or a freight train or box car passing over it under conditions and circumstances attending it and similar to those confronting deceased on the night of the accident—were matters properly and rightfully to be considered by the jury in determining the question of whether deceased conducted himself as an ordinarily prudent person would have done. The jury were also authorized to consider, in connection with the above facts, the testimony that because the highway, track, crossing, and box cars were all of dark material, and because the state law required headlights on automobiles to be focused downward, causing the automobile lights not to reflect upon the crossing or cars on it until within such close proximity to them as to render it difficult to stop in time to prevent an accident. The fact that the lights above and beyond the crossing accentuated the darkness, or ordinarily diverted or attracted men's attention to them, were also matters to be considered by the jury in determining this issue. On witness testified, in this connection, that as an automobile driver approached

this crossing on a dark night and when a freight train is moving over it, he can see the electric lights on the elevation to the west through the spaces between the cars as they moved along; that under these conditions the electric lights apparently flicker and give the impression that the headlights of an approaching automobile are being switched on and off, as is often done when automobiles meet in the nighttime; and that notwithstanding the fact that he had used the crossing for many years, on one occasion and under similar conditions as confronted deceased on the night he lost his life, witness almost ran his automobile into a freight train moving over the crossing because his attention had been so attracted to the electric lights. These were proper matters for the jury to consider in determining whether deceased acted as an ordinarily prudent person under the attendant circumstances.

[10] Appellant's contention that deceased was guilty of contributory negligence as a matter of law for failing to so control the movements of his automobile as that, in the exercise of ordinary care, he could have stopped it within the distance an object might have been discovered in the road by the headlights, is not well taken, because the above facts and attendant circumstances surrounding the crossing justify the jury's conclusion that they were sufficient to attract or direct the attention of an ordinarily prudent man from the crossing or box car on it. And the authorities cited by appellant in support of this contention are not in point wtih reference to the facts in this case, for they simply hold that where there is nothing obstructing the view of an automobile driver to an object in the road within the range of his headlights, and where his attention is not diverted or attracted from the road or object in it in such a manner as the attention of an ordinarily prudent person would have been attracted or diverted, under such a state of facts he would be guilty of contributory negligence in running into the object as a matter of law.

[11] Appellant's fourth and seventh propositions assert that the court erred in refusing to give certain requested special charges, explanations, or instructions in connection with special issues 1 and 2. Error is based solely upon the refusal to give the requested instructions which are in effect but general charges, grouping certain facts and instructing the jury to answer the issues, "No," if they found such state of facts to exist. In the case of Freeman v. Railway Co., 287 S. W. 902 (Commission of Appeals) it is held:

"The request forming the basis of complaint here did not purport to be an issue at all. It is a general instruction upon the facts, directing the jury how to answer the court's issue 9. It has been decided over and over again that, where a cause is submitted upon special issues, no general charge should be given. Only such explanations and definitions of legal terms used as will explain the issues are allowable."

[12] The eighth proposition complains that the court erred in refusing to instruct the jury as follows:

"If you answer special issue No. 1 in the affirmative, then answer this question:

"Were the conditions, which you find render such crossing more than ordinarily dangerous as a nighttime crossing, known to the defendant, or were they such conditions as ought to have been known to it by the use of ordinary care?"

The issue was properly refused because it was not a material inquiry whether appellant knew of the condition surrounding the crossings. The material inquiry and the test fixing liability have been quoted in this opinion, and suffice it to say here that since the jury found a more than ordinarily dangerous crossing to exist, and that a person of ordinary prudence would have under the circumstances lighted the crossing as a given "means" for protecting the traveling public using it, the law charges appellant with notice of such conditions.

[13] The thirteenth proposition and assignment No. 8, upon which it is based, predicate error solely upon the refusal of the court to submit the following issue:

"At the rate of speed deceased was driving as he approached the crossing in question, could he have stopped the automobile within the distance that he could have discovered the presence of the train on the road, by the headlights, by the use of that degree of care that an ordinarily prudent person would use under like or similar circumstances. Answer yes or no."

The issue should not have been submitted, because it is defective, in that it does not call for a finding whether the facts detailed constituted negligence; nor that the acts were the proximate cause of the injuries; nor does it call for a finding of any ultimate facts or facts which would compel a judgment. Each act of contributory negligence pleaded was submitted to the jury by issue No. 4. In the case of Freeman v. Railway Co., supra, the identical question here raised was decided by the Commission of Appeals against appellant's contention, in the following language (285 S. W. 607):

"But before the defendant would be entitled to such submission, it would have to request such issue in proper form. Where the court has actually submitted the defense, though in general terms, it is not error to refuse a requested issue which is incorrect. The defendant must, at his peril, present a properly drawn issue for submission. If the requested issue is defective, it should be refused, and no error could, of course, be predicated upon such refusal."

The remaining propositions are without merit and are overruled, and the judgment of the trial court is affirmed.

Affirmed.