MISSOURI, K. & T. R. CO. OF TEXAS v. LONG. (No. 7392.)

Court of Civil Appeals of Texas. Austin. Oct. 30, 1929.

Rehearing Denied Nov. 20, 1929.

Charles C. Huff, of Dallas, J. B. Hubbard, of Belton, J. B. Daniel, of Temple, and J. M. Chambers, of Dallas, for appellant.

Winbourn Pearce, of Temple, for appellee.

BLAIR, J. Our opinion on a former appeal (293 S. W. 184) states the case and the evidence held to sustain the verdict and judgment on that appeal. This trial was had upon substantially the same pleadings and evidence as the first, and the jury again found that the conditions surrounding the crossing were such as to make it an unusually dangerous or hazardous crossing without a light to show a freight train or box car passing over it on a dark night; that the failure of appellant to provide such a light was negligence and caused the accident; and that appellant knew, or in the exercise of ordinary care should have known, of the conditions surrounding the crossing. Judgment was for appellee for $18,000; hence this appeal.

As on the former appeal, appellant contends that the judgment should be reversed and rendered for it, because:

1. There was no evidence to sustain the

jury's finding of such an unusually dangerous or hazardous nighttime crossing at the time of the accident as to create a necessity for a light. See M., K. & T. R. R. Co. v. Magee, 92 Tex. 616, 50 S. W. 1013; Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; Tisdale v. Railway Co. (Tex. Com. App.) 228 S. W. 133, 16 A. L. R. 1264; Ft. Worth Benev. Ass'n v. Jennings (Tex. Civ. App.) 283 S. W. 910.

2. As a matter of law the evidence convicted deceased of contributory negligence for failure to keep a lookout for objects in the road ahead, and for driving his automobile at such a rate of speed that he could not stop it within the radius of its headlights in time to avoid running into an object in the road. See Trochta v. M., K. & T. R. R. (Tex. Com. App.) 218 S. W. 1038; Hines v. Arrant (Tex. Civ. App.) 225 S. W. 767; G. H. & S. A. Ry. Co. v. Duty (Tex. Com. App.) 277 S. W. 1057; Cameron Compress Co. v. Whitington (Tex. Com. App.) 280 S. W. 527, 529; Salter v. G. H. & S. A. Ry. (Tex. Civ. App.) 285 S. W. 1112; Missouri, K. & T. Ry. Co. v. Luten (Tex. Com. App.) 228 S. W. 159; B. S. L. & W. Ry. Co. v. Sterling (Tex. Civ. App.) 260 S. W. 320; Freeman v. G. H. & S. A. Ry. (Tex. Com. App.) 285 S. W. 607; Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139; Schawe v. Leyendecker (Tex. Civ. App.) 269 S. W. 864; Jones v. Sunshine Grocery & Market (Tex. Civ. App.) 236 S. W. 614; Rozycky v. Yantic Grain Co., 99 Conn. 711, 122 A. 717, 37 A. L. R. 582; Kendall v. Des Moines, 183 Iowa, 866, 167 N. W. 684; Murphy v. Hawthorne, 117 Or. 319, 244 P. 79, 44 A. L. R. 1397.

3. There was no evidence to show appellant knew, or should have in the exercise of ordinary care known, of the alleged unusually dangerous or hazardous conditions surrounding the crossing at the time of the accident.

These propositions are overruled upon authority of our opinion and that of the Commission (299 S. W. 854) on the former appeal, and the authorities above cited. Briefly, the evidence shows the crossing to be in a depression or flat and is approached by travelers going as deceased was at downgrade from 700 feet back to within about 200 feet of the tracks. Reflections from lights in the city of Temple, which constantly burned at night, show on a dark night in the heavens above a freight train or car that might be on or passing over the crossing and are faced by travelers, going as deceased was, for about 1,000 feet after turning towards the crossing, and from a hill high above the crossing or freight train that might be on or passing over it. These conditions existed long prior to the accident and are continuing in their very nature. Deceased was traveling the road for his first time. An affirmative answer was given by each of appellee's ten witnesses, doctors, farmers, peace officers, an undertaker, a garage man, etc., who had used the crossing

for many years prior to the accident and since, in the nighttime and under similar conditions as confronted deceased at the time of his accident, to the following question: "State whether, in approaching that crossing, going in the direction of Temple on a dark night in an automobile, not a misty or rainy night, but a dark night, with headlights burning brightly and in good condition, and the brakes in good condition, and approaching at an ordinary rate of speed, looking straight ahead in front, it is or is not very difficult to see a moving freight train that happens to be on the crossing until you get very close to it?"

Both on direct and cross examination each of these witnesses fully explained what he meant by the term "very difficult" and "very close," as used in the question propounded, and several of them testified to having had near-accidents in trying to make the crossing under similar conditions as confronted deceased at the time of his accident; but avoided same only by swerving their automobiles to the right and into a ditch. This evidence presented strong circumstances and was properly and rightfully considered by the jury:

■ 1. In determining whether the crossing was unusually dangerous or hazardous as a nighttime crossing at the time of the accident.

[2] 2. In determining whether deceased conducted himself as an ordinarily prudent person would have done under similar conditions in approaching the crossing, and therefore not guilty of the acts of contributory negligence alleged.

■ 3. In determining whether appellant knew, or in the exercise of ordinary care should have known, of the alleged unusually dangerous or hazardous conditions surrounding the crossing at the time of the accident.

M., K. & T. R. R. Co. v. Long (Tex. Civ. App.) 293 S. W. 184; C., R. I. & G. R. R. v. Steele (Tex. Civ. App.) 264 S. W. 503, 510; T. & N. O. R. R. v. Crow (Tex. Civ. App.) 300 S. W. 93; District of Columbia v. Armes, 107 U. S. 519, 2 S. Ct. 840, 845, 27 L. Ed. 618; Encyclopedia of Evidence, Vol. 10, 477; C. & N. W. R. R. Co. v. Netorlicky, 67 F. 665, 14 C. C. A. 615; Phelps v. Ry. Co., 37 Minn. 485, 35 N. W. 273, 274, 5 Am. St. Rep. 867; T. & P. R. R. Co. v. Payne (Tex. Civ. App.) 35 S. W. 297; Cyclopedia, vol. 33, p. 1076.

■■ We overrule in this connection the contention of appellant that the court erred in permitting the above questions and answers thereto because same were leading and the answers constituted opinions of the witnesses and were of uncertain meaning and indefinite, and left the jury to speculate as to what the witnesses meant by the terms "very difficult" and "very close" as used in the questions propounded. Appellant not only cross-examined each witness as to what he meant by these terms, but sought to show by other witnesses of its own that a person approaching the crossing under the conditions detailed in such questions, and in the exer-

cise of ordinary care, could see a freight train on the crossing in time to stop his automobile within the radius of its headlights and avoid running into same. Then, too, evidence of this character was strongly objected to by appellant on the former appeal of this case, and both this court and the Commission held it admissible, although neither specifically discussed the question of its admissibility. We think the evidence not only admissible, but that it presents strong circumstances and probably the most satisfactory practical test tending to show: (a) That the crossing was an unusually dangerous crossing without a light on a dark night; (b) that deceased was not guilty of contributory negligence as alleged because of the common experiences and difficulties other persons of ordinary prudence had in making the crossing; and (c) that because these conditions had existed for such a long period of time and being continuous in their very natures, appellant as an ordinary prudent person should have known them.

In Ry. Co. v. Steele, supra (writ of error dismissed for want of jurisdiction), where witnesses were permitted to testify that on one occasion after the accident they were nearly run over by a train at the crossing there in question and under similar conditions as existed at the time of the accident inquired about, and that they did not discover the train until very close, it was held as follows: "We do not feel prepared to say that it was reversible error to show that other persons than the driver and occupants of the car in question likewise had occasion to go over it, and that they, too, failed to hear or see the approach of the train. Nothing in the evidence is pointed out to show that the circumstances were so dissimilar as to require the rejection of this testimony."

■ With respect to showing of the happening of other near-accidents at the same place, the Supreme Court of the United States held, in the case of District of Columbia v. Armes, supra, as follows: "The admission of this testimony is now urged as error, the point of the objection being that it tended to introduce collateral issues and thus mislead the jury from the matter directly in controversy. Were such the case the objection would be tenable, but no dispute was made as to these accidents, no question was raised as to the extent of the injuries received, no point was made upon them, no recovery was sought by reason of them, nor any increase of damages. They were proved simply as circumstances which, with other evidence, tended to show the dangerous character of the sidewalk in its unguarded condition. The frequency of accidents at a particular place would seem to be good evidence of its dangerous character —at least, it is some evidence to that effect. Persons are not won't to seek such places, and do not willingly fall into them. Here the character of the place was one of the subjects of inquiry to which attention was called by the nature of the action and the pleadings, and the defendant should have been prepared to show its real character in the face of any proof bearing on that subject. Besides, this, as publicity was necessarily given to the accidents, they also tended to show that the dangerous character of the locality was brought to the attention of the city authorities."

Or, as to the general rule with respect to the admissibility of this character of evidence, Encyclopedia of Evidence, vol. 10, p. 477, states it as follows: "Other accidents or injuries to other persons at the same crossing are not competent evidence of the defendant's negligence. But such facts have been shown competent as showing the nature of the crossing and as bearing upon the question of contributory negligence."

With respect to the admission in evidence of the difficulties experienced by other travelers in attempting to make a crossing, the court held in Phelps v. Ry. Co., supra, that it: " * * * Was admissible both to prove the unsafe condition of the highway, and also that this had continued so long as to charge defendant with knowledge of the fact, and with negligence in not removing the obstruction. * * * Proof of the fact that other persons were unable to cross, and of the efforts they made to do so, was competent for the purpose of showing the obstructed and unsafe condition of the highway. It is analogous in principle to cases where evidence of similar accidents is admitted to show that the common course was in an unsafe condition. It is the practical test of common experience, often the most satisfactory evidence."

Numerous propositions are urged with respect to the court's refusing to give certain requested issues or instructions in connection with those given or requested to be given. These are overruled because the court by a carefully prepared charge submitted all grounds of recovery and all defenses thereto raised by the pleadings and evidence, together with all instructions or definitions of the terms used as were necessary, and most of the matters urged are supertechnical and had nothing to do with the practical matter of trying a law suit before a jury.

■ The court submitted, over appellant's objection that it contained "two separate and distinct questions, one of which could be answered in the affirmative and the other in the negative, without conflict," the following special issue: "Do you find from a preponderance of the evidence that the deceased, S. H. Long, failed to keep a proper lookout for objects in the road ahead, and that, in so doing, he was guilty of contributory negligence, as that term has been herein defined?"

We overrule the proposition because the questions merely presented two phases or branches of the same defense, both of which had to be answered in the affirmative to establish the contributory negligence pleaded.

If the two questions had been submitted separately, no doubt the court would have instructed the jury to answer the second phase, that is, "was he guilty of contributory negligence as that term has been herein defined," only in the event they had answered the first phase of the defense, that is, whether deceased "failed to keep proper lookout for objects in the road ahead," in the affirmative. Therefore no greater burden was placed upon appellant than the law required by grouping in one issue such questions or facts as are necessary to establish one complete defense pleaded, and, if anything, was more favorable to appellant than if the two phases of the defense had been submitted in separate issues, for in that event only the first phase would have been answered under the usual practice, instead of both phases as was the case here. Then, too, had the two phases of the defense been submitted separately, the answer to either phase in the negative would not have changed the result of the case.

This above proposition is typical of several others urged with respect to issues submitting other complete defenses of contributory negligence, and which are overruled for the reasons above stated.

We also overrule, as being without merit, all propositions or assignments of error urged by appellant whether same has been discussed or not; and affirm the judgment of the trial court.

Affirmed.