**FT. WORTH & DENVER CITY RY. CO. v.
LOONEY et al.**

No. 15257.

Court of Civil Appeals of Texas.
Fort Worth.

June 22, 1951.

Rehearing Denied July 20, 1951.

Seth Barwise, Fort Worth, Donley Suddath, Henrietta, H. M. Muse, Wichita Falls, for appellant.

Stine & Stine, Henrietta, for appellee.

RENFRO, Justice.

On March 8, 1949, a passenger car driven by Don Massey collided with a standing freight train at the crossing of the Ft. Worth & Denver City Railway tracks and Highway No. 148, just inside of the city limits of Henrietta, Texas. The plaintiffs, L. C. Looney, Lee Palacios, Jr., and La Marylis Gibson, were riding in the car with Don Massey and sustained injuries as a result of the accident. This suit was filed by L. C. Looney, a minor, by his next friend, W. A. Looney, and Lee Palacios, Sr., and Lee Palacios, Jr., a minor, by Lee Palacios, Sr., as next friend and La Marylis Gibson, a minor, by her next friend, Jimmie Gibson, as plaintiffs against the Ft. Worth & Denver City Railway Company as defendant, hereinafter called appellant, in the district court of Clay County, Texas. Plaintiffs alleged that the railway crossing where such accident occurred was more than an ordinarily dangerous crossing, and that the defendant was negligent in not having in operation an automatic audible warning device, an automatic lighting device, in not having a flagman at such crossing and in not having such crossing lighted to reveal the presence of a train at such crossing and alleged that each of such acts were negligence and a proximate cause of the injuries sustained by the minor plaintiffs. The appellant specifically denied such allegations of negligence and specifically denied that the crossing in question was more than an ordinarily dangerous crossing and further alleged that the driver of the car failed to keep a proper lookout and that he was driving at an excessive rate of speed and that such speed was negligence and a proximate cause of the accident, and further alleged that the driver of the car and the plaintiffs were on a joint enterprise and that the negligence of the driver was imputed to the plaintiffs.

The jury found that the crossing in question was more than an ordinarily dangerous nighttime crossing; that the same was known by the defendant to be more than an ordinarily dangerous nighttime crossing and by the exercise of ordinary care would have known that it was more than an ordinarily dangerous crossing and that appellant was guilty of negligence in failing to have the crossing lighted, in failing to have an automatic warning device at the crossing and in failing to have a flagman at the crossing, and that each of said acts of negligence was a proximate cause of the injuries to the plaintiffs. The jury further found that the driver of the automobile failed to keep a proper lookout which was a proximate cause of the accident in question, and that the speed at which he was

driving the car was negligence and a proximate cause of the collision. Based upon the jury's verdict, judgment was entered for the plaintiffs and appellant has appealed to this court.

The appellant contends in his first point that there was no evidence of probative force that the crossing was more than an ordinarily dangerous crossing and for such reason there was no disputed issues of fact to submit to the jury concerning such crossing.

The evidence introduced by the plaintiffs show that the city of Henrietta is built on a high hill. One of its streets runs straight south until it reaches the Katy railroad and continues south to the crossing of the Ft. Worth & Denver Railroad and for several hundred feet beyond. There are houses along the sides of the street north of the Katy railroad and there are street lights at street intersections and these street lights are so spaced as to be at different elevations, as the level of the street drops going toward the south. One approaching the appellant's tracks going north, as were the plaintiffs, can see the street lights as he travels up an incline from a low place south of the appellant's tracks and these lights appear over the top of the rails and a person facing north can see the street lights under the train. The appellant's tracks are on the top of a slight elevation and immediately north of appellant's tracks the elevation is somewhat lower and the lights of automobiles traveling south can be seen under the train by occupants of the automobiles traveling north, and a glow from the city lights of Henrietta appears over the trains on the track; that these circumstances, coupled with the fact that there is an incline on the highway as one approaches the tracks from the south, causes the lights to shine on the pavement and over the rails and under the train in such a manner as to give an illusion to a person traveling north that there is nothing ahead except open road. Numerous witnesses testified to these conditions. Witness Dugger, for instance, testified that he had traveled that highway since 1905. That he has crossed the railroad tracks numerous times, both day and night, and in all kinds of weather and on "moonlight nights and dark nights and medium nights and various kinds of nights." That he has approached it when trains were on the track and that when you approached the crossing, coming up the incline going north, you can look over the rails and under the train and see the lights from the town of Henrietta; that the lights of the town make it appear that there is no train on the track and that lights shining from the other side of the track will make it appear that there is no train. Substantially the same testimony was given by fifteen or more witnesses. The case of Missouri, K. & T. R. Co. of Texas v. Long, Tex.Civ.App., 293 S.W. 184, is somewhat similar to the case at bar. In that case the evidence showed that as the driver of the automobile approached the crossing there were various electric lights in the city of Temple, such as porch lights and street lights which continually burn at night and which are directly faced by an automobile driver immediately upon making his turn to the west, so he cannot see standing trains. The Long case was appealed to the Supreme Court and in 299 S.W. 854, 855, and in opinion by the Commission of Appeals approved by the Supreme Court, the court held that "an extraordinary place of danger as a place so peculiarly dangerous that prudent persons cannot use the same with safety, unless extraordinary means are used to protect such place." The case was reversed because the trial court had failed to define properly "more than ordinarily dangerous is a crossing". The Long case was again appealed after subsequent trial and in Missouri, K. & T. R. Co. of Texas v. Long, Tex.Civ.App., 23 S.W.2d 401 (error refused), the court upheld a judgment for plaintiff, the court holding that the evidence was properly and rightfully considered by the jury. In Beaumont, S. L. & W. R. Co. v. Richmond, Tex.Civ.App., 78 S.W. 2d 232, the accident occurred as the plaintiff was approaching the town of Sour Lake. The facts are similar to facts in this case. The court held the evidence sufficient to uphold a jury finding of hazardous crossing.

■ In the case of Gulf, C. & S. F. Ry. Co. v. Picard, Tex.Civ.App., 147 S.W.2d

303 (error dismissed), plaintiff was riding in an automobile and collided with a gondola car stopped on the highway at night. The court held that the evidence was sufficient to warrant submission of special issue as to whether conditions surrounding the crossing at the time of the accident were such to render the crossing more than ordinarily dangerous. See also St. Louis, B. & M. Ry. Co. v. Brack, Tex.Civ.App., 102 S.W.2d 261; Texas & N. O. R. Co. v. Davis, Tex.Civ.App., 210 S.W.2d 195 (refused NRE). We believe that in light of the authorities cited that the evidence offered by the plaintiff was sufficient to uphold the jury finding that the crossing in question was more than ordinarily dangerous and we hereby overrule appellant's contention.

Appellant's third point is rather long, but in substance contends that the jury having found that the driver of the car was guilty of contributory negligence; that such negligence is imputed to the plaintiffs, appellant's contention being that plaintiffs and the driver of the car were on a joint enterprise.

No issues of negligence were requested or submitted to the jury as to the plaintiffs.

According to the record, Don Massey and Richard Massey, brothers, borrowed their father's automobile to go from their home in the northern part of Clay County to a basketball game at Midway in the southern part of the county. After leaving home, they picked up the three plaintiffs and another boy. The owner of the car, father of the Massey boys, testified that he loaned the car to his sons and that he did not care which one drove. That nothing was said about anyone other than his sons driving the car or having the car, and that he did not talk to any of the other young people. The other young people were, as stated, picked up after the Massey boys left home. The record is silent as to whether the father of the Massey boys knew whether anyone other than his sons were going. Don, the younger brother, and L. C. Looney and Lee Palacios were members of the same basketball team and La Marylis Gibson was a guest of Richard Massey. Richard Massey drove the car to Midway and after the basketball game was over, Don started to drive home, and was driving at the time of the unfortunate accident. The record shows that Don had been driving an automobile since he was seven or eight years old, and had never had an accident of any kind. The older brother, Richard, also was an experienced driver. Nothing was said by any of the plaintiffs about whether they had any right to operate the automobile and none of the plaintiffs attempted to have anything to do with the driving of the automobile and no one other than Don and his brother Richard had anything to do with borrowing the car from their father.

The appellant relies on the case of El Paso Electric Co. v. Leeper, by the Commission of Appeals, reported in 60 S.W.2d 187, 189. The facts in that case are clearly distinguishable from the facts in the case before us. The Commission of Appeals stated the following rule, "As applied to occupants of a conveyance, the doctrine of joint enterprise not only requires joint possession thereof by the joint adventurers, but they must also have joint control and responsibility for its operation." In the Leeper case, the car belonged to Miss Leeper's mother with whom she was then living. She was accustomed to driving this very car; she was of age; she conducted all negotiations with her mother for the loan of the car. The court held that the jury having found that Lt. Nutter was guilty of contributory negligence, Miss Leeper could not recover because she was on a joint enterprise with him, and his negligence was imputed to her.

In the case of Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W.2d 474, 477, (Commission of Appeals, adopted by the Supreme Court), the facts show that Atwell and Woods from the Dallas office of the Ford Motor Company, went to Waco to the Cruger Motor Company, and accompanied by Maddin, salesman for the Cruger Company, proceeded to Lampasas in Cruger Company's demonstration car for the purpose of selling the car. Maddin actually drove part of the way, but on the return trip, while Atwell was driving, an accident occurred in which Maddin was killed. Al-

though Maddin had authority to drive the car and it was part of his duty to drive it, the court upheld the finding that Maddin did not have equal right with Atwell to control. Said the Commission of Appeals, "the evidence, taken all in all, was sufficient to support the jury's finding that Maddin did not have an equal right with Atwell to control the driving and operation of the car at the time of the collision.

"This disposes of the contention that Atwell and Maddin were engaged in a joint enterprise on the occasion in question."

In the case of Pryor v. Le Sage, 133 S. W.2d 308 (Opinion by this Court), the plaintiff and the driver of the car were upon a mission for the purpose of arranging details of a proposed trade of cars. If the trade were consummated, each would profit thereby. The errand was mutually beneficial. But, this Court held, before joint enterprise can be established, there must be evidence that they have equal rights, express or implied, to direct and control the conduct of each other in the operation of the conveyance.

Schuhmacher Co. v. Holcomb, Tex. Civ.App., 174 S.W.2d 637 (refused want of merit), also holds that equal right to direct and control the conduct of the other in the operation of the automobile is a prime element in the relationship of joint enterprise. The evidence falls short of showing joint enterprise. The relationship of equal right, expressed or implied, to direct and control the conduct of Don in the operation of the automobile is lacking. The evidence establishes that the parties were not engaged in a joint enterprise at the time of the collision and therefore the negligence of Don Massey, the driver of the car, is not imputed to the plaintiffs. We therefore overrule the appellant's contention that the plaintiffs were engaged in a joint enterprise with the driver of the car.

In Point No. 4, the appellant contends that the plaintiffs L. C. Looney and La Marylis Gibson received injuries in subsequent accidents and that no evidence was offered by plaintiffs to separate or distinguish the injuries and damages received by them in the collision in question from the injuries and damages received in subsequent accidents, and the jury had no basis on which to separate the same. The jury awarded L. C. Looney $3750 for the personal injuries sustained, and awarded his father, W. A. Looney, $750 for loss of services of L. C. Looney. The plaintiff L. C. Looney had several witnesses testified at length and in great detail as to the injuries sustained by L. C. Looney. He was unconscious or "out of his head" for at least twelve days. He was almost continuously screaming and yelling, both day and night; his face was so badly swollen he could not tell where the injuries were; his lips were turned back against his nose and were terribly swollen; one tooth was turned back against the roof of his mouth and four front teeth were knocked out; while he was in the hospital his head was more or less like jelly. W. A. Looney, the father of L. C. Looney, testified about the same and that following his release from the hospital, he complained that his head hurt him all of the time, that for a month after he left the hospital he complained that his head hurt him all of the time, and that his nose bothered him quite a bit and that his left ankle hurt him; that he had a peculiar walk about him; that he could not handle his right leg very well and that at the time of the trial was still awkward; that he could not pick his right foot up and that his toes would drag considerably in walking; that since the accident, L. C. Looney had worked some in cotton pulling; he could not hold out like he used to; if he pulls hard one day, for the next three or four days he would not do much and complained of his head and back hurting him; since the accident he complains about his eyes when he reads; that he notices considerable difference in regard to L. C.'s memory since the accident; that L. C. has to be told the same thing several times before he understands; that he is considerably slower in motion than he was and does not seem to pay much attention in comparison with what he used to. L. C.'s teacher testified that she had noticed considerable difference in L. C. before and after the accident. He was a normal boy

and made average grades; that since the accident she can tell that something is wrong with him; that he is vague and foggy like. The Superintendent of the school who also taught L. C. one class testified that after the accident, L. C. could not remember as well as before and that he noticed before the accident L. C. always played ball on the playground, but after the accident he acted like he thought he was playing, but he was more in a dazed condition.

Some time after the accident in question, a horse fell with L. C. and he was bruised on the collar bone, shoulder and arm. No bones were broken. He saw his doctor twice for that accident. In the court's charge, the court asked the jury what sum of money, if any, would reasonably and fairly compensate the plaintiff for the personal injuries received as a proximate result of the negligence, if any, of the railroad company, and in the instruction accompanying the issue, the court specifically instructed the jury not to take into consideration any damages from any injury received by L. C. Looney subsequent to the accident in question.

█ The injuries in the second accident were shown to be minor, and the evidence does not disclose that either the collar bone, shoulder or arms were injured in the automobile collision and we do not see how the defendant could have been prejudiced in any way, especially in view of the precautionary instruction given to the jury by the trial judge not to allow any damages for any injuries sustained in the subsequent accident. The injuries in the subsequent accident were entirely separate and apart from the ones related by L. C. Looney and the other witnesses pertaining to the accident in question.

█ The plaintiff La Marylis Gibson, in the accident in question, sustained a badly bruised jaw, had knots on her head and nose; one ear was pulled partly from her head; one arm and shoulder was bruised and her chest was hurt; she had scratches and cuts on her face and for several weeks following the accident, the places would fester up and pieces of glass would come

out of her face; that she had headaches a lot and had a hurting in her chest and that following the accident she complained of her eyes and was fitted for glasses. In a subsequent automobile accident, she sustained a broken left leg, but testified that she was not injured anywhere else insofar as she knew. The court instructed the jury not to allow La Marylis Gibson damages for injuries sustained in any subsequent accident. The jury allowed damages in the sum of $250 for the injuries sustained in the accident in question. We think in view of the instruction in the charge given by the court, the appellant's rights were amply protected regarding damages for injuries sustained in the subsequent accident.

In point No. 5, the appellant asserts that the trial court erred in admitting the testimony of approximately seventeen witnesses who testified to near accidents at or near the crossing in question for the reason that such evidence was offered without any predicate being laid for the introduction of same, having been offered before the plaintiffs testified as to the conditions existing and observed by the plaintiffs on and immediately prior to the accident in question and without any testimony that the condition was similar to the conditions at the time in question. In support of this contention the following authorities are cited: American Nat. Life Ins. Co. v. Nussbaum, Tex.Civ.App., 230 S.W. 1102; Weaver v. State, 68 Tex. Cr.R. 214, 150 S.W. 785; San Antonio & A. P. Ry. Co. v. Jackson, 38 Tex.Civ. App. 201, 85 S.W. 445; International & G. N. R. Co. v. Kuehn, 2 Tex.Civ.App. 210, 21 S.W. 58; Shelly v. City of Austin, 74 Tex. 608, 12 S.W. 753; Thompson v. Galveston, H. & S. A. Ry. Co., 48 Tex.Civ. App. 284, 106 S.W. 910. An examination of the above authorities shows that they all pertain to opinion or expert testimony.

█ In the case at bar, we do not consider the testimony complained of to be opinion or expert testimony and therefore it does not come under the rule announced in the foregoing cases. Approximately 150 pages of the statement of facts contain the testimony of which the appellant com-

plains. The witnesses told what they had observed about the approach to and the crossing in question, and the things that could be observed on the other side of the crossing. They described the elevation of the track; the street beyond the tracks; the approach to the crossing; the lights of the street in the city of Henrietta; automobile lights on the far side of the appellant's tracks and during all kinds of weather; when approaching the crossing from the south the lights from the town and lights of approaching automobiles on the other side of the crossing made it look like there was nothing on the crossing and gave the appearance of an open track. It appears to us that this is not a mere opinion, but is stating what they saw. No witness was asked and did not give an opinion as to whether or not the crossing was dangerous or more than ordinarily dangerous. They were merely asked what they saw and what could be seen as they approached the crossing in question. A number of said witnesses testified to near accidents and in each instance claim that because of the conditions and circumstances surrounding the crossing, they could not see the standing train across the highway. The plaintiffs alleged and it was incumbent upon them to prove that the crossing in question was more than ordinarily dangerous as a nighttime crossing and that the defendant knew or by use of ordinary care should have known that the crossing was more than ordinarily dangerous. The evidence was admissible both on the question of dangerous crossing and notice to the defendant.

In the case of Missouri, K. & T. R. Co. of Texas v. Long, 23 S.W.2d 401, 402, (refused), ten witnesses were asked the question "State whether, in approaching that crossing, going in the direction of Temple on a dark night in an automobile, not a misty or rainy night, but a dark night, with headlights burning brightly and in good condition, and the brakes in good condition, and approaching at an ordinary rate of speed, looking straight ahead in front, it is or is not very difficult to see a moving freight train that happens to be on the crossing until you get very close to it".

All ten witnesses answered in the affirmative. On cross examination, each witness testified to having had near accidents in trying to make the crossing under similar conditions as confronted deceased at the time of the accident, but avoided same only by swerving their automobiles to the right and into a ditch. The court held that this evidence presented strong circumstances and was properly and rightfully considered by the jury, both in determining whether the crossing was unusually dangerous or hazardous as a nighttime crossing at the time of the accident, and in determining whether appellant knew, or in the exercise of ordinary care should have known, of the alleged unusually dangerous or hazardous conditions surrounding the crossing at the time of the accident.

In Texas & N. O. R. Co. v. Davis, Tex. Civ.App., 210 S.W.2d 195, 201, (NRE), witnesses were permitted to testify of a difficulty of seeing cars at night and how the cars would suddenly loom up before them. A police officer was permitted to testify that he had had several calls to the crossing involved in that suit; that most of them were at night when there was a drizzle or light rain but that several calls occurred on clear nights. A witness was permitted to testify to near accidents at the same place and answered, " 'There wasn't any evidence of a train being there. It didn't reflect any light; wasn't anything to show you that the crossing was there.' " Another witness testified that it was difficult to see these tank cars under conditions such as those surrounding plaintiff. The court held the evidence raised the issue that the defendant was under duty to give plaintiff other notice of the presence of the cars upon the crossing than was afforded by the cars alone. The court continued, " * * * it may be inferred from the evidence that plaintiff had the same experience as did Trevey and Wood (witnesses), that the car which he struck was unduly concealed from his view as he approached it, and that the resulting temporary illusion mislead him, causing him to believe that his way was clear until too late to prevent his colliding with defendant's car."

In Central Texas & N. W. Ry. Co. v. Gibson, 35 Tex.Civ.App. 66, 79 S.W. 351, 353, a witness was properly permitted to testify, "I had seen some narrow escapes at that crossing * * * and knew pretty well what it was." The case of City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W. 2d 954, 159 A.L.R. 125, by the Supreme Court, was a case in which a bicyclist rode from the end of a street into a railroad cut. Several witnesses were permitted to testify over defendant's objection that it appeared to them that 30th street extended across the railroad track. Their testimony was held admissible. In Beaumont, Sour Lake & Western R. Co. v. Cluck, Tex.Civ.App., 95 S.W.2d 1033 (writ dismissed), the court held it was proper for plaintiff to introduce evidence of prior accidents.

See also 45 C.J. 1246, Sec. 810 cc. and Sec. 811 dd. 65 C.J.S., Negligence, § 234.

█ In the case before us, the driver of the car, Don Massey, was knocked unconscious and could remember nothing since immediately after he left Midway, site of the basketball game, to return home. He remembered nothing of the accident. The jury was entitled to take into consideration the entire accident scene as portrayed to them by the witnesses who were familiar with the crossing. It was a fact question for the jury whether failure of the defendant to have signals, lights and a flagman was negligence and proximate cause. These issues they have concluded against the defendant and we are bound by their findings. The driver of the car in the instant case being knocked unconscious and having no recollection of the collision, it may be inferred that the same situation confronted him that confronted the other seventeen witnesses as he approached the crossing. We believe the testimony of said witnesses was properly received.

█ The appellant's last point of error complains of the action of the trial court in admitting in evidence a letter written by the secretary of the Henrietta and Clay county Chamber of Commerce to the agent of the Fort Worth & Denver City Railway Company concerning the crossing in question. The portion of the letter admitted in evi-

dence reads as follows: "September 29, 1948. Mr. O. R. Dorsey, Agent, Ft. Worth & Denver City Railway Company, Henrietta, Texas. Dear Mr. Dorsey: It has come to the attention of the Chamber of Commerce of Henrietta that there are no warning signals on the railroad crossing where the new Jacksboro-Henrietta Highway crosses approximately one mile south of Henrietta. This crossing is subject to heavy traffic, including numerous school buses, * * * As the crossing is now protected, there is great danger of a serious accident and we urge that you give this matter your immediate attention. Will you please communicate the contents of this letter to the proper department of your organization who has control of such situations. Yours very truly, Henrietta and Clay County Chamber of Commerce." At the time the letter was offered, plaintiff's counsel stated to the court, "We offer the letter solely on the question of whether or not * * * on the issue of notice to the defendant." The letter was signed by Robert K. Howard, secretary of the Chamber of Commerce. O. R. Dorsey, the local agent of the appellant testified that he received the letter and that he sent it to the proper department of his company that handles that kind of thing.

Plaintiffs base their law suit upon the claim that the railroad crossing was more than ordinarily dangerous. It was necessary that plaintiff prove that the appellant knew, or by the exercise of ordinary care should have known that the crossing was more than an ordinarily dangerous nighttime crossing. Missouri, K. & T. R. Co. v. Long, supra; Texas & N. O. R. Co. v. Davis, supra; Texas City Terminal Ry. Co. v. Allen, Tex. Civ.App., 181 S.W.2d 727 (error refused). The letter was written approximately six months before the accident occurred. See 38 Am.Jur., Sec. 324, p. 1020; 65 C.J.S., Negligence § 228, page 1045. The statement is made therein that "evidence that before the accident or injuries complained of a danger or defect had been made or warning thereof given to the person in charge by the other party or by a third party * * * is admissible to show

the knowledge of or notice to the person charged with such defect or danger."

The letter was admissible for the purpose for which it was offered. The appellant's points of error are hereby overruled and the judgment of the trial court affirmed.